STATE ex rel. GILDAR *v.* KRISS

[No. 27, October Term, 1948.]

570

572

 

*Decided December 8, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Samuel K. Dennis* and *Ellis Levin* for the appellant.

*Hall Hammond, Attorney General,* and *William J. O'Donnell, Assistant State's Attorney for Baltimore City,* with whom were *Harrison L. Winter, Assistant Attorney General,* and *J. Bernard Wells, State's Attorney for Baltimore City,* on the brief, for the appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal, by leave granted by this court (Code, Art. 42, sec. 3C), from an order remanding petitioner for a writ of habeas corpus granted pursuant to the Uniform Criminal Extradition Act. Art. 41, sec. 22. The right of appeal in habeas corpus cases "shall not apply to any case unless the petitioner is detained for or confined as the

result of a prosecution for a criminal offense." Art. 42, sec. 3D, Acts of 1945, ch. 702. In the instant case petitioner is detained in Maryland, for extradition from Maryland, as the result of a prosecution for conspiracy to violate the prohibition laws of North Carolina. Ordinarily a statute is not applicable extraterritorially, but only to acts done within the jurisdiction, though any extradition statute is an exception to this generalization. At any rate petitioner is detained in Maryland, as the result in Maryland of a prosecution for a criminal offense. We think the right of appeal under Art. 42, secs. 3C and 3D, is applicable.

The case presents questions as to the constitutionality and application of section 18 of the Uniform Criminal Extradition Act (Art. 41, sec. 18; Acts of 1937, ch. 179), which provides: " (Extradition of Persons Not Present in Demanding State at Time of Commission of Crime.) The Governor of this state may also surrender, on demand of the Executive Authority of any other state, any person in this state charged in such other state in the manner provided in Section 15 with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand, and the provisions of this sub-title not otherwise inconsistent, shall apply to such cases, even though the accused was not in that state at the time of the commission of the crime, and has not fled therefrom."

Petitioner is in custody, pursuant to a warrant of the Governor of Maryland, to be delivered to an agent of the State of North Carolina. From a North Carolina warrant and also from affidavits, all of which are part of the demand of the Governor of North Carolina to the Governor of Maryland, it clearly appears that it is charged that petitioner and others on or about July 23, 1947, "as well before as after said date", in Guilford County, North Carolina, conspired to violate the laws of North Carolina, "by engaging and carrying on the business of transporting, handling, dealing in and selling spiritous liquors, both at wholesale and retail, and * * * in carrying

out * * * said conspiracy", they on July 21, 1947 purchased in Baltimore, Maryland, 215 cases of such liquors and transported them by truck from Baltimore into Guilford County, North Carolina, for the purpose of sale, contrary to law, and "have transported and sold to various bootleggers in North Carolina from February 19, 1947 to July 31, 1947 a total of 54,426 cases, * * * all in flagrant violation of the laws of North Carolina." One of the affidavits, not a part of the warrant, alleges that petitioner "was not present in the State of North Carolina at the time of the commission of the crime of which he is charged, and has not fled from said State but * * * while in the State of Maryland entered into a conspiracy with other defendants in North Carolina intentionally resulting in the commission of a series of crimes in Guilford County, North Carolina". This much clearly appears, though the North Carolina papers are crudely and verbosely drawn, on a printed form for extradition of fugitives from justice pursuant to the applicable federal statutes, modified and supplemented by inept references to the section of the North Carolina Uniform Criminal Extradition Act, G. S. § 15-60, which is applicable to extradition from North Carolina, not from Maryland into North Carolina, but is the same as section 18 of the Maryland act. The warrant of the Governor of Maryland, issued after a hearing, recites that it appears that petitioner had committed an act in this state that intentionally resulted in a crime in North Carolina and that the demand by the Governor of North Carolina is accompanied by a copy of a warrant and affidavit charging petitioner with conspiracy. Section 18 of the Maryland Act authorizes surrender of any person in this state charged in another state "in the manner provided in Section 15" with committing an act in this state intentionally resulting in a crime in the demanding state. Section 15, relating to fugitives from justice, authorizes extradition only on a demand in writing, "accompanied * * * by a copy of an affidavit made before a Justice of the Peace or Magistrate * * *, together with a copy of any warrant

which was issued thereupon." On demand for extradition of a fugitive from justice a state may require less (but not more) than is required by the federal statutes. *Innes v. Tobin,* 240 U. S. 127, 36 S. Ct. 290, 60 L. Ed. 562.

We think the requirements of section 18 (and section 15 so far as incorporated by reference) have been complied with, and that the demand for extradition is not vitiated by surplusage in the papers. It is not inconsistent to lay the venue of the crime, in the warrant, in North Carolina, though petitioner was not in North Carolina. "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power". *Strassheim v. Daily,* 221 U. S. 280, 285, 31 S. Ct. 558, 560, 55 L. Ed. 735. Until 1894, if not since, in North Carolina a criminal act was punishable only where it took effect, not where it was committed. *State v. Hall,* 115 N. C. 811, 20 S. E. 729, 28 L. R. A. 289, 44 Am. St. Rep. 501. Under the Uniform Criminal Extradition Act, extradition was prohibited by the court in *Cassis v. Fair,* 126 W. Va. 557, 29 S. E. 2d 245, 151 A. L. R. 233, on the ground that the indictment was bad under the laws of Ohio, the demanding state, and in *Ennist v. Baden,* 158 Fla. 141, 28 So. 2d 160, and *In re Brewer,* 61 Cal. App. 2d 388, 143 P. 2d 33, on the ground that the warrant, which charged abandonment or desertion and non-support of a child in another state, was insufficient. In *Culbertson v. Sweeney,* 70 Ohio App. 344, 44 N. E. 2d 807 (appeal dismissed, 140 Ohio St. 426, 45 N. E. 2d 118), in which grant of extradition was sustained, the accused was indicted as an accomplice in a conspiracy to cause an abortion and the crime was alleged to have been committed in New York. *Cf. Ex parte Campbell,* 147 Neb. 820, 25 N. W. 2d 419. In cases of fugitives from justice, under the Constitution of the United States, questions as to the sufficiency of the indictment are for the courts of the demanding state to determine. *Drew v. Thaw,* 235 U. S. 432, 35 S. Ct. 137,

59 L. Ed. 302. In the instant case the warrant charges specific acts done in Maryland to carry out a crime in North Carolina. Under the Uniform Act "the guilt or innocence of the accused * * * may not be inquired into by the Governor or in any proceeding after the demand for extradition", except as it may be involved in identifying the person held as the one charged. Art. 41, sec. 31. We think the warrant sufficiently charges acts done in Maryland intentionally resulting in a crime in North Carolina, and also that the purpose and effect of the Uniform Act is to deal with such charges in the same way as with fugitives from justice and therefore to leave to the courts of the demanding state questions as to the technical sufficiency of the indictment or warrant.

At the hearing on the writ of habeas corpus, and at the argument in this court, it was admitted, indeed asserted, on behalf of petitioner, that: He is and was an officer of a corporation engaged in the sale of liquors at wholesale in Baltimore; such liquors are sold to buyers who take them in Maryland and haul them away in their trucks; the names and addresses of all North Carolina buyers and the amounts of liquor sold (though delivered in Maryland) are reported to federal and Maryland law enforcement agencies as required by law; the North Carolina authorities are regularly given this information by the Maryland authorities. There was uncontradicted evidence that: for the first months of operation in Maryland, from February through July, 1947, out of sales aggregating 42,665 cases about 99.9 per cent were made to North Carolina addressees; one customer, an alleged co-conspirator, owned a truck, with a North Carolina license, with a false panel which resembled the front end of the truck but left a space about eight feet back from the front in which to store liquor; at the hearing before the Governor petitioner said he had seen this false panel and had seen liquor stored forward of it; invoices of petitioner's corporation for 215 cases of whisky seized in this truck in Guilford County, North Carolina, were found in the truck.

Petitioner contends that section 18 of the Uniform Act is unconstitutional because it is at variance with the provision, in Article IV, sec. 2, of the Constitution of the United States, that "A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime", and with the Act of Congress enacted pursuant thereto. Act of February 12, 1793, c. 7, 18 U. S. C. A. § 662 (revised and recodified as § 3182 by Act of June 25, 1948, c. 645). His contention is that the provision in Art. IV, sec. 2, is the only provision in the constitution for interstate extradition and, since it is applicable only to fugitives from justice, the states are thereby denied power of extradition of any other interstate criminals.

We find no support, in principle or in authority, for this contention. The manifest purpose of the constitutional provision was to impose a duty upon the states to surrender fugitives from justice, not to confer upon other interstate criminals immunity from extradition. This provision is applicable only when the accused was present in the demanding state at the time of the commission of the crime and thereafter fled from the state. *Hyatt v. People of the State of New York ex rel. Corkran*, 188 U. S. 691, 23 S. Ct. 456, 47 L. Ed. 657; Art. 41, sec. 15. Absence of any constitutional provision for extradition of other interstate criminals leaves that subject within the reserved powers of the states. The Act of Congress of 1793 does not cover the entire subject matter of the constitutional provision. "* * * the reasonable assumption is that by the omission to extend the statute to the full limits of constitutional power it must have been intended to leave the subjects unprovided for not beyond the pale of all law, but subject to the power which then controlled them—state authority until it was deemed essential by further legislation to govern them exclusively by national authority." *Innes v. Tobin*, 240 U. S. 127,

134, 135, 36 S. Ct. 290, 292, 60 L. Ed. 562. We think a like assumption is necessary with respect to the ommission in the constitution to cover the entire subject of interstate extradition.

Petitioner relies upon a dictum of Judge (later Chief Judge) Cullen in *People ex rel. Corkran v. Hyatt,* 172 N. Y. 176, 182, 64 N. E. 825, 826, 60 L. R. A. 774, 92 Am. St. Rep. 706, "that no person can or should be extradited from one state to another unless the case falls within the constitutional provision, and that the power which independent nations have to surrender criminals to other nations as a matter of favor or comity is not possessed by the state", quoted by Judge Hough *In re Kopel,* D. C., 148 F. 505, 506, and by Judge Aldrich in *Ex parte Thaw,* D. C., 214 F. 423, 432. None of these three cases involved the constitutionality of a state statute authorizing extradition of interstate criminals other than fugitives from justice. The *Corkran* case was affirmed, and the *Thaw* case reversed, by the Supreme Court without in either case approving (or expressly disapproving) this dictum. *Hyatt v. People of the State of New York ex rel. Corkran, supra; Drew v. Thaw, supra.*

The Uniform Criminal Extradition Act has been enacted in thirty-two states and in Hawaii. In none of these jurisdictions has it been held unconstitutional; in five it has been held constitutional by state courts and the contention now made by petitioner has been rejected. *English v. Matowitz,* 148 Ohio St. 39, 72 N. E. 2d 898; *Ex parte Campbell, supra,* 147 Neb. at pages 825, 826, 25 N. W. 2d 419; *Ex parte Morgan,* Cal. App. 194 P. 2d 800; *Cassis v. Fair, supra; Ennist v. Baden, supra.*

Petitioner suggests that, if the Uniform Act is valid, a citizen of Maryland may be extradited to a distant state if he intentionally commits in Maryland any act which may, though he does not know it will, result in violation of any law of any of the other forty-seven states. In the instant case the warrant and the facts alleged in it do not require such a construction of the words "committing an act in this state intentionally resulting in a crime" in the demanding state. Transportation and sale

"to various bootleggers in North Carolina" of thousands of cases of liquor in a few months "in flagrant violation of law" is not consistent with ignorance of the fact that such acts are contrary to the laws of North Carolina. Though we may not pass upon petitioner's guilt or innocence, this statement is also true of loading liquor in Baltimore into a North Carolina truck behind a false panel, especially in connection with the fact that 99.9 per cent of petitioner's sales were made to North Carolina addressees.

Petitioner, and also the lower court, have animadverted upon failure of the legislature to follow the New York act by inserting in section 18 words limiting extradition to acts which would be punishable by the laws of Maryland if the consequences had taken effect here. It is not for us to say what the legislature should have done. The words of section 18 are clear, and it is at least understandable that the legislature may wish to prevent Maryland from being made a base for violation of the North Carolina liquor laws, even though those laws are not the same as Maryland laws.

Petitioner also contends that the offense charged against him cannot be punished by the State of North Carolina because the transportation or importation of liquor into any state in violation of the laws of the state is prohibited by the Twenty-First Amendment to the Constitution of the United States and by the Act of Congress of June 25, 1936, c. 815, 49 Stat. 1928, now 18 U. S. C. A. §§ 1261-1265, 3615. This contention is untenable. The fact that an act may constitute a violation of the laws of two sovereignties, *e. g.*, a state and the United States, does not exempt it from punishment by either or both sovereignties. *United States v. Lanza,* 260 U. S. 377, 382-385, 43 S. Ct. 141, 67 L. Ed. 314; *Ulman v. State,* 137 Md. 642, 113 A. 124; *Molinari v. State,* 141 Md. 565, 119 A. 291, affirmed 263 U. S. 685, 44 S. Ct. 179, 68 L. Ed. 506; *Weisengoff v. State,* 143 Md. 638, 123 A. 107, affirmed 263 U. S. 685, 44 S. Ct. 179, 68 L. Ed. 506.

*Order affirmed, with costs.*