STATE EX REL. ZACK *v.* KRISS, CAPTAIN OF DETECTIVES

[No. 5, October Term, 1950 (Adv.).]

*Decided June 8, 1950.*

*Rehearing denied July 18, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Reuben Shiling,* with whom was *Joel J. Hochman* on the brief, for the appellant.

*Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Joseph D. Buscher, Special Assistant Attorney General, J. Bernard Wells, State's Attorney for Baltimore City,* and *Anselm Sodaro, First Assistant State's Attorney,* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order of Judge Robert France of the Supreme Bench of Baltimore, in a *habeas corpus* case, remanding Joseph Anthony Zack, appellant, to the custody of Captain Henry J. Kriss of the Baltimore Police Department, appellee.

The appellant is charged in Lebanon County, Pennsylvania, in six indictments for six separate acts of burglary. Warrants on these indictments were issued in Pennsylvania. On February 6, 1950, the Governor of Pennsylvania issued a requisition to the Governor of Maryland for the arrest and return of Zack to Pennsylvania for trial on the aforesaid charges. The appellant was placed under arrest. Uniform Criminal Extradition Act, Code 1939, Article 41, Sections 13-40 inclusive. An extradition hearing was held in the Attorney General's office in the State House at Annapolis by Mr. Buscher, a Special Assistant Attorney General of Maryland. Counsel appeared at that hearing for the appellant and testimony of witnesses was taken in an effort to show that appellant was in Maryland when the alleged crimes were committed and therefore he was not a fugitive from Pennsylvania. Testimony was also offered by the Commonwealth of Pennsylvania. Acting on the verbal report made by the Special Assistant Attorney General, Governor Lane issued the rendition warrant and appellant was arrested.

The appellant then filed a Petition for a Writ of *Habeas Corpus,* claiming he was not in Pennsylvania at the times alleged in the indictments. The writ was granted and a hearing was held before Judge France. At that hearing appellant was again represented by counsel.

Testimony was offered both to sustain and contradict the contention that he was a fugitive from Pennsylvania. At the conclusion of the hearing the judge ordered that appellant be remanded to the appellee and from that order appellant appeals directly to this Court.

Code 1947 Supplement, Article 42, Section 3C, provides, among other things, that a person who is "aggrieved by the order of the Judge in * * * remanding the person seeking said [*habeas corpus*] writ, may within ten days after the passage of said order, apply to the Court of Appeals of Maryland for leave to prosecute an appeal therefrom." The section further provides that, if this Court grants the application, the procedure "thereafter shall be in conformity with the rules of the Court of Appeals, and the Court may affirm, reverse, or modify the order appealed from * *". *State ex rel. Gildar v. Kriss*, 191 Md. 568, 573, 62 A. 2d 568, 569. The appellant did not follow the procedure set out in Code, Article 42, Section 3C, *supra*, but appealed directly to this Court. The Attorney General states that as appellant appealed immediately after the hearing, the State does not wish to raise the technical question as to whether the appeal is properly before this Court. In the interest of justice we will consider this question, before dismissing the appeal.

The appellant contends that the trial judge did not decide the question of whether the appellant was a fugitive from justice. With this contention we do not agree. Judge France, in his oral opinion, says in part: "Under the *Gildar* case [*State ex rel. Gildar v. Kriss*, 191 Md. 568, 62 A. 2d 568], which possibly is your authority for what you have done today, you ask for testimony to be taken and for me to determine whether, we shall say, 'reasonable cause' has been shown to warrant the Governor in signing the papers which would take Joseph Zack to Pennsylvania for trial. As I said, except for the *Gildar* case, I would have said, No, you are not entitled to produce such testimony because you are substituting, in effect, my judgment for that of the Governor of the

State." Testimony was taken before Judge France as to whether there was reasonable cause to believe that Zack was in Pennsylvania at the time of the commission of the alleged crimes and Judge France signed the order remanding Zack to the custody of the appellee. He must therefore have decided that the *prima facie* presumption that Zack was within the State of Pennsylvania when the alleged offenses were committed, (*Illinois ex rel. McNichols v. Pease*, 207 U. S. 100, 109, 28 S. Ct. 58, 52 L. Ed. 121, 125); had not been overcome and that Governor Lane was justified in signing the extradition papers. When the judge remanded the appellant, he acted on his finding that the appellant was a fugitive from justice.

The appellant further contends that the hearing held before the Special Assistant Attorney General did not comply with the requirements of Code, 1939, Article 41, Section 16. That Section provides: "When a demand shall be made upon the Governor of this state by the Executive Authority of another state for the surrender of a person so charged with crime, the Governor may call upon the Attorney General or any prosecuting officer in this state to investigate or assist in investigating the demand, and to report to him the situation and circumstances of the person so demanded, and whether he ought to be surrendered." The appellant contends that the Special Assistant Attorney General is not the proper person to conduct the investigation and make the report to the Governor because the statute permits "no delegation by the attorney general of the duties required of him." Appellant has apparently overlooked the provisions of Code 1947 Supplement, Article 32A, Section 4, which reads in part: "The Deputy Attorney General and the Assistant and Special Assistant Attorneys General and the law clerks shall each perform such duties as the Attorney General may from time to time assign to them, and the Attorney General is hereby authorized to assign to them and each of them the performance, subject to his direction and control, of any of the duties required of him by law." This last quoted section clearly

permits the assignment here attacked. The testimony shows that Mr. Buscher, the Special Assistant Attorney General, recited in detail to Governor Lane the testimony produced. The Governor went over the evidence throughly and then signed the extradition papers.

The appellant finally argues that he has shown clearly and satisfactorily and beyond a reasonable doubt that he is not a fugitive from justice. In the case of *Hyatt v. New York ex rel. Corkran,* 1903, 188 U. S. 691, 23 S. Ct. 456, 458, 47 L. Ed. 657, the Supreme Court of the United States said: "We are of opinion that the warrant of the governor is but *prima facie* sufficient to hold the accused, and that it is open to him to show by admissions, such as are herein produced, or by other conclusive evidence, that the charge upon which extradition is demanded assumes the absence of the accused person from the state at the time the crime was, if ever, committed. * * * If upon a question of fact, made before the governor, which he ought to decide, there were evidence *pro* and *con,* the courts might not be justified in reviewing the decision of the governor upon such question. In a case like that, where there was some evidence sustaining the finding, the courts might regard the decision of the governor as conclusive."

In the case of *Munsey v. Clough,* 1905, 196 U. S. 364, 25 S. Ct. 282, 285, 49 L. Ed. 515, the Supreme Court of the United States said: "But the court will not discharge a defendant arrested under the governor's warrant where there is merely contradictory evidence on the subject of presence in or absence from the state, as *habeas corpus* is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused."

In *Illinois ex rel. McNichols v. Pease,* 1907, 207 U. S. 100, 28 S. Ct. 58, 62, 52 L. Ed. 121, *supra,* it is said: "When a person is held in custody as a fugitive from justice under an extradition warrant, in proper form, and showing upon its face all that is required by law to be shown as a prerequisite to its being issued, he

should not be discharged from custody unless it is made clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States."

In the case of *South Carolina v. Bailey*, 1933, 289 U. S. 412, 53 S. Ct. 667, 669, 77 L. Ed. 1292, the person sought to be extradited from the State of North Carolina by the State of South Carolina was charged with murder in the latter state. The accused claimed that he was in North Carolina when the alleged crime was committed. He was discharged under a writ of *habeas corpus* by the North Carolina judge. The Supreme Court of the United States, to which the case was finally appealed, through Justice McReynolds, reviewed the evidence. The Court set out generally the affidavit of the accused and said that "A number of affidavits and the testimony of several witnesses given in open court tend to support his narrative." The demanding state presented three witnesses, two police officers, and a merchant who positively identified Bailey as the man who shot the deceased officer. The Court pointed out that some circumstances tended to support the statements of the state witnesses and said: "The record presents an irreconcilable conflict of evidence. It is not possible to say with certainty where the truth lies." After quoting from *Munsey v. Clough*, *supra*, and *McNichols v. Pease*, *supra*, the Court stated the following: "Considering the Constitution and statute and the declarations of this Court, we may not properly approve the discharge of the respondent unless it appears from the record that he succeeded in showing by clear and satisfactory evidence that he was outside the limits of South Carolina at the time of the homicide. Stated otherwise, he should not have been released unless it appeared beyond reasonable doubt that he was without the state of South Carolina when the alleged offense was committed and, consequently, could not be a fugitive from her justice. The record discloses only a conflict of evidence; the requirement which we have indicated

has not been met; and the challenged judgment must be reversed."

In the case now before this Court, the appellant testified that he was not in Pennsylvania on the dates of the alleged crimes and stated where he was on those dates. Among other evidence provided by Zack was the following: Adolph F. Greblauskas and Anthony C. Baltrem testified that on the night of July 31 and the morning of August 1, 1949, the dates of one of the alleged burglaries, Zack was crabbing with them in the Patuxent River in Maryland. An affidavit was offered from William H. Thorne that he rented a boat to Zack at that time. It was agreed by counsel for the appellant and the State that, if called, the following witnesses would testify as follows: Mrs. Joseph Zack, the wife of the appellant, would say that her husband was in Baltimore on July 31, August 1, October 1, October 2, and October 13, 1949, the dates on which the appellant was accused of burglaries in Pennsylvania. Samuel Maranto, Anthony Giordan, and Walter Zack, a brother of the appellant, would say that on October 1, 1949, the appellant won $70 in a card game in Baltimore. Al Kane would testify that on October 2, 1949, the appellant came to his house in Baltimore to borrow a pipe threader to fix a bursted pipe at his home. Joseph Bisetti would testify that on October 13, 1949, he borrowed some money from the appellant in Baltimore, part of $500 which appellant had won on a number. Roy Writ would testify he was with Zack in Baltimore on October 13, 1949.

On the other hand, the demanding State offered Earl Firestone, one of the alleged accomplices of the petitioner, who testified that on July 31, 1949, Joseph Zack came to his home in Lebanon, Pennsylvania, and was introduced to his wife, Eva Firestone, by Ray Weber. He said he again saw Zack on October 2, 1949, when Zack came out of a chemical plant in Lebanon, Pennsylvania with "burglar tools in a little black satchel with the money in there and he said he had to take out a whole window frame out of the building." Eva Firestone testified she

568

saw the appellant in Lebanon, Pennsylvania, on the night of July 31, 1949 at her home when Weber introduced her to him about midnight. In the early morning of August 1, 1949, Zack and Weber called to her to let them in the house. They brought a gun, a pistol, a drill, an electric razor, and some pennies in a box which they told her to "give to the kids": They returned several hours later and Weber cursed her and "threw $300 on the table and he said it was $400 and he wanted to go in business, in partnership with my husband at the restaurant which he took over."

, We can say in this case, as was said by the Supreme Court in a number of cases above cited, that the evidence here is merely contradictory on the question of whether the appellant was absent from the State of Maryland. It is not the equivalent of an undisputed fact. This is not the proper proceeding to try the question of alibi. It has not been clearly and satisfactorily shown beyond a reasonable doubt, to overcome the otherwise controlling presumption, that the appellant is not a fugitive from Pennsylvania. The record here before us discloses "only a conflict of evidence". The evidence to overcome the presumption must be overwhelming. For the reasons hereinbefore given, the appeal must be dismissed.

*Appeal dismissed, with costs.*