## FARMERS' STATE BANK OF TEXHOMA v. STATE.

No. A-2848.    Opinion Filed April 14, 1917.

(164 Pac. 132.)

1. **CONTEMPT—Punishment—Jurisdiction.** A contempt being an offense against the dignity and authority of the particular court to which the affront was offered, if the court has jurisdiction of the parties and the subject-matter out of which the contempt grows, it has jurisdiction to try and punish the contemnor, regardless of where or in what state the acts constituting the contempt may have been committed.

2. **SAME—Jury—Indirect Contempt—Question for Jury—Jury Trial.** A party charged with indirect contempt is entitled to have a jury pass upon the question of his guilt or innocence, before penalty or punishment is imposed. But the jury's province is limited solely to the question of guilt or innocence, and they have nothing to do with the penalty to be imposed.

3. **SAME—Violation of Injunction Order—Information.** Where an information charging contempt for violating an injunction order is attacked upon the ground that it did not specifically plead that an injunction bond had been given, it is **held** that, since it did plead that the injunction order was "duly and legally issued," it was sufficient as against demurrer, since the essentials of the legality of an injunction order are so well understood and so thoroughly established.

*Error from District Court, Texas County;*
*W. C. Crow, Judge.*

The Farmers' State Bank of Texhoma was found guilty of indirect contempt, and it brings error. Affirmed.

*Breslin & Breslin, Embry, Crockett & Johnson,* and *E. L. Fulton,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., for the State.

BRETT, J.   In this case the plaintiff in error appeals from a judgment finding it guilty of indirect contempt, by reason of it having willfully and knowingly violated an injunction order of the district court of Texas county, enjoining it from selling or disposing of certain property, a portion of which was situated in the State of Texas, just across the state line.   And this charge of contempt is based solely upon the sale of the property situated in the State of Texas.

1.   The principal and most serious contention relied upon by plaintiff in error is that contempt is criminal in its nature, and, since all the acts constituting the contempt were committed in the State of Texas, that the district court of Texas county, Okla., had no jurisdiction to try or punish plaintiff in error for contempt by reason of these acts.   But plaintiff in error fails to distinguish the difference between contempt and other criminal acts. Murder, larceny, arson, and such offenses in law are considered as an offense against the peace and dignity of the state; hence the jurisdiction to try and punish a person for such offenses is placed alone in the hands of the particular county and state against which the offense has been committed.   But contempt is an offense against the dignity and authority of the particular court to which the affront is offered.   If that court is willing to overlook and condone the insult, no other court, even in the same county, has a right to interfere.   But if a court has juris-

diction of the parties, and the subject-matter out of which an indirect contempt grows, the affront is none the less directly against the dignity and authority of that court, no matter to what county or state the offender may go to violate the order of the court. If that were not true, then injunction orders in many instances would be a farce. It would be ridiculous to say that an order enjoining the sale of personal property, over which the court had jurisdiction, could be violated with impunity, if the litigant only took the pains to cross the state line before disposing of it. And it makes no difference as to the character of the property, whether real or personal, or where it is situated; if the court has jurisdiction to enjoin its sale, a violation of that order, wherever committed, is an offense against the dignity and authority of the court making the order, and that court, and that court alone, has the right to punish or complain. And it has that right, regardless of the location or the place to which the contemnor may have gone to violate its order. This distinction, to our minds, is so clear and essential that we deem it unnecessary to discuss that feature further.

2.   The next assignment of error deserving attention is that the court refused to instruct the jury that if they found the defendant guilty, they might fix the punishment; and plaintiff in error relies upon section 5933, Rev. Laws 1910, to support this contention. But plaintiff in error has clearly overlooked the provisions of section 25 of the Bill of Rights, which are that:

"Any person accused of violating or disobeying, when not in the presence or hearing of the court, or judge sitting as such, any order of injunction, or restraint, made or entered by any court or judge of the state shall, before penalty or punishment is imposed, be entitled to a trial by jury as to the guilt or innocence of the accused."

Under this section, the province of the jury is specifically limited to the question of "the guilt or innocence of the accused." For it provides, in matters of contempt growing out of the violation of injunction orders, not committed "in the presence or hearing of the court, or judge sitting as such," that, "before penalty or punishment is imposed" the accused shall "be entitled to a trial by jury as to the guilt or innocence of the accused." Under such conditions, the offense not being committed in the presence of the court, the court is wholly dependent upon evidence to establish the guilt or innocence of the accused. Hence it is provided that under these conditions a jury may be had, and may make a finding "as to the guilt or innocence of the accused" under the evidence introduced. But the province of the jury provided for in that section is only to pass upon the guilt or innocence of the accused, and they have nothing to do with the penalty or punishment to be imposed, for that is not even fixed by law, but is, and should be, left to the sound discretion of the court.

3. The only remaining assignment that does not present questions that have been passed upon so frequently that we deem it unnecessary to repeat what has heretofore been so frequently said, goes to the sufficiency of the information, objecting particularly because the information did not specifically allege that an injunction bond had been given. But the information does repeatedly and in various ways allege that on a certain date the order of injunction was "duly and legally issued." And it can hardly be maintained that, for the purpose of that pleading, this is not sufficient, as against a demurrer. In charging bigamy it would be sufficient to allege that the accused and his first spouse were duly and legally married,

without alleging that a license was had, and a minister performed the ceremony in the presence of certain named witnesses. The facts of that allegation might be traversed, but the essentials to the legality of the transaction are so well established that to say they were duly and legally married would be sufficient as against a demurrer. And so it is in the instant case. The plaintiff in error might have traversed the allegation that an injunction order was duly and legally issued by showing by way of defense that, as a matter of fact no bond had been given; but the essentials of the legality of an injunction order are so well established and so thoroughly understood that to plead that the injunction order was duly and legally issued is sufficient as against a demurrer. But in this case the record shows, and plaintiff in error admits, that an injunction bond was duly given; hence, in the trial of the case, it did not attempt to traverse that fact.

Finding no reversible error, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.