## D. M. MARTINDALE v. STATE.

No. A-2726.    Opinion Filed April 26, 1919.

(180 Pac. 385.)

1. INJUNCTION—Temporary Injunction—Violation and Punishment. Section 13, chapter 70, Session Laws 1911, construed, and held to authorize a trial court at the commencement of the action to issue a temporary order of injunction. Where the trial court has jurisdiction of the original subject-matter and obtains jurisdiction of the parties to the injunction proceedings, and issues such temporary order of injunction, it has jurisdiction to punish by contempt proceedings those parties guilty of willful disobedience of the order of injunction.

2. APPEAL AND ERROR—Review—Ruling on Challenged Juror—Specifying Error. An assignment of error based upon the court's action in overruling a challenge for cause to an individual juror will be of no avail on appeal unless there is an affirmative showing that the challenge for cause was well founded, and that the defendant was compelled to accept such disqualified juror by reason of having theretofore exhausted all of his peremptory challenges. Also the acceptance of such juror by waiving a peremptory chal-

lenge as to him will render such an assignment of error unavailing.

3.   EVIDENCE—Judicial Notice—Personnel of Officers of Court of Record. A court of record takes judicial notice of the personnel of its officers.

4.   CONTEMPT—Punishment—Verdict—Amendment. In a proceeding for a contempt of court, the punishment is left by the Legislature to be inflicted by the trial judge. The words "unable to agree on penalty," appearing in the verdict of the jury finding the defendant guilty of contempt, did not constitute a prerequisite to a valid verdict. The action of the trial court in amending said verdict by placing such words above the names of the jurors who signed such verdict by and with the consent of such jurors before the verdict was received and filed with the clerk, instead of leaving such words below the names signed to the verdict, did not constitute error.

5   CONTEMPT—Appeal and Error—Modification of Judgment—Statute. Under the provisions of section 6003, Rev. Laws 1910, this court has power to modify a judgment appealed from by reducing the punishment to conform to the statutory provisions and to best subserve the ends of justice. For reasons stated in body of opinion, the judgment is modified, and, as modified, is affirmed.

*Appeal from District Court, Tulsa County;*
*Conn Linn, Judge.*

D. M. Martindale was convicted of the crime of indirect contempt of court, and his punishment assessed at a fine of $1,000 and imprisonment in the county jail for a period of six months, and he appeals. Modified and affirmed.

Plaintiff in error, D. M. Martindale, a practicing attorney at law of the bar of Tulsa county, Okla., was found guilty in the district court of Tulsa county of the crime of indirect contempt, and sentenced to pay a fine of $1,000 and to serve six months in the county jail.

The said court, on the application of the county attorney of said county asking a temporary injunction against E. E. Chartier and Walter Miller, and against a certain building located in the city of Tulsa, known as the Joplin

Drug Store, issued at the commencement of the action said temporary injunction on the allegations of a verified petition that said Chartier and Miller were operating a liquor joint and gambling house on said premises, and asking in connection with the granting of said temporary injunction against the operation of such unlawful enterprise, that said premises be placed in the possession of the sheriff of said county, and securely padlocked to prevent the use of said premises for the purpose of unlawful traffic in intoxicating liquor and to prevent gambling therein.

At the time of the issuance of said temporary injunction, summonses were also issued and served on the defendants Chartier and Miller to appear within the time prescribed by law to answer said petition, which said summonses were served upon the defendants, together with a copy of the temporary writ of injunction, upon the day that said action was commenced, to wit, the 22d of January, 1916, and a rule issued against said defendants to show cause, if any, why upon final hearing, said injunction should not be made permanent.

On the 16th day of February, 1916, the defendants Chartier and Miller, through their attorney, Luther James, Esq., filed a motion to modify the order of injunction theretofore issued by setting aside so much thereof as directed the sheriff to take charge of the property and lock the door of the house, because said injunction was issued directing the sheriff to take charge of said property and lock the door without a hearing and upon an ex parte application, and the court had no jurisdiction or authority to enter said order until a hearing was had and determination made that a public nuisance existed, the order to that extent being alleged to be void. On the 23d day of February, 1916, the said defendants Chartier and Miller appeared.

and filed a demurrer to the petition for a writ of injunction, alleging that said petition did not state facts sufficient to constitute an action in favor of the plaintiff and against the defendants.

Thereafter, on the 31st day of March, 1916, the county attorney (without any action having been taken upon the defendants' motion to modify or upon the demurrer to the petition) filed in said case an application and showing asking that the defendants Chartier, Miller, and John Doe, whose real name was unknown to the informant, be cited to show cause, if any, why they should not be held in contempt of court for violating said temporary injunction by removing the locks and notices from said premises and taking charge thereof, and operating same in violation of the temporary order of injunction. In pursuance of said application, an attachment was issued, directed to the sheriff of Tulsa county, to attach the bodies of E. E. Chartier, Walter Miller, and J. W. Appleman, and bring them instanter before the judge of the district court, which attachment was served on the 31st day of March, 1916, by arresting the said Chartier, Miller, and Appleman and bringing them before the court.

On the 7th day of April, 1916, the said defendants Chartier, Miller, and Appleman, through their attorney, Luther James, Esq., filed a demurrer to the showing and complaint to show cause why they should not be held in contempt of court, which demurrer was based:

(1) "That the court was without jurisdiction to make that part of the order of injunction which required the sheriff of Tulsa county to lock up the Joplin Drug Store before there was a judgment entered in said cause"; (2) "that said order of injunction upon which these proceedings are predicated is void, and especially that part of it which

required said sheriff to lock said building"; (3) "because there is not sufficient complaint filed herein to put defendants on trial for contempt"; (4) "that the allegations made in the complaint and proceedings filed herein do not contain facts which constitute the offense of contempt."

And thereafter, on the 20th day of April, 1916, the defendants Chartier, Miller, and Appleman filed an answer to the citation for contempt in two paragraphs: (1) A general denial of guilt of any of the acts charged in the citation; and (2) an answer in the following language:

"They further allege that they did not violate said injunction, which was in force against the room at No. 2 North Main street known as the Joplin Drug Store, and that they did not remove the lock from the door of the same; that the defendant W. R. Miller employed D. M. Martindale, an attorney of this bar, to look after the matter of having the said injunction modified so as to permit the owners of the store to enter the same; that the said W. R. Miller was informed by the said D. M. Martindale that he would secure a modification of said injunction so as to enable the said Miller to enter said store, and that the said D. M. Martindale informed the said defendant Miller that his fee for doing the same was $150, $75 of which he demanded at once, and $75 to be paid as soon as said injunction was modified. The said defendant W. R. Miller states that he paid the said D. M. Martindale $75 in cash, and thereupon he believed in good faith that the said D. M. Martindale filed proper proceedings in court to have said order modified so as to enable him to legally open said store; that shortly thereafter the lock was removed from the said door by the said D. M. Martindale, this defendant has since been informed, but this defendant was unaware of the manner in which said lock was removed at the time he entered the said store; that he in good faith believed that the said D. M. Martindale had secured an order of this court, modifying said injunction so as to enable him and others to enter said store; that upon this belief, he paid

the said D. M. Martindale the other $75 which he promised him as his fee for the said services, and files herewith as a part hereof the receipts and checks showing said payments; that neither of these defendants entered said store in willful disobedience of said injunction, but they did so in good faith, believing that the said injunction had been modified by an order of this court, so as to enable them to legally enter said room, and had they not received the assurance from the said D. M. Martindale that the said lock had been removed from the said door, and that the same was duly and legally opened, this defendant would not have entered said store; that he did this upon the assurance of his said counsel, D. M. Martindale, that everything was all right, and that the court had acted in the premises, and that the sheriff had removed the lock from the door, and in good faith paid said attorney's fee to said D. M. Martindale for said services; that these defendants have at all times had regard for the mandates of this court, and have at no time wished to violate the letter or spirit of any injunction issued by this court, and have at no time willfully done so.

"Wherefore said defendants ask that said citation be quashed, and they go hence without day.

"LUTHER JAMES, *Attorney for Defendants.*"

On the 20th day of April, 1916, the county attorney of Tulsa county filed a reply to said defendants' answer, denying each and every allegation thereof, and on the same day also filed an information and complaint, charging said D. M. Martindale with indirect contempt of court, the substance of the allegation of said information being as follows:

After setting out in substance the matters of inducement leading up to the filing of the information, such as the complaint against Chartier and Miller, the issuance of the temporary order of injunction, the return made to the same by said Chartier and Miller, including the answer to

said temporary writ of injunction, in which defendants denied any intention to violate said injunction, and blaming said D. M. Martindale as heretofore set out; also alleging that the temporary order of injunction had not at that time been either modified, vacated, or set aside, and that the said Martindale knew that said injunction had not been modified or set aside, and for said reasons the county attorney believed that the said Martindale wrongfully, unlawfully, and in contempt of court did remove and procure to be removed the padlocks and notices on said building, and did wrongfully and unlawfully in contempt of court open up said building while the same was under the order of court by reason of said temporary injunction, and, for the reason that the parties were placed back in possession of said premises by said Martindale informing them that the temporary injunction had been lifted therefrom, asked a citation to issue against said D. M. Martindale to show cause, if any, why he should not be held for contempt of court.

On said 20th day of April, 1916, an attachment was issued to the sheriff to bring the said D. M. Martindale before the court to answer for contempt, and such attachment was executed on the 21st day of April, 1916, by bringing said D. M. Martindale before said court.

On the 22d day of April, 1916, the defendant, Martindale, filed his demurrer to the said information for the following reasons:

"First. That the same was issued by the court without proper and legal showing and upon an ex parte showing under petition verified by the county attorney of Tulsa county, according to belief, said petition not being supported by the affidavit of any person who pretended or knew any of the material facts alleged in said petition, without which said order should not have been granted by the court.

"Second. That said order of injunction was rendered and granted by the court without a judgment having first been rendered that the premises conducted by the defendants as alleged in said petition was a nuisance and was being conducted in violation of law, as by law required in such case-made and provided.

"Third. That said order of injunction was granted in violation of the Constitution of the United States, of the Constitution of the state of Oklahoma, and the express provision of the statutes of the state of Oklahoma under which these proceedings were instituted.

"Fourth. That said order of injunction as granted was an unlawful invasion of the constitutional property rights of the defendants in said action, and the same did not constitute the due process of law required before said order could issue.

"Fifth. That said order being void *ab initio*, this respondent could not be in contempt for a violation thereof.

"Sixth. That said information against this respondent fails to state a cause of action."

After the overruling of the foregoing demurrer, the defendant filed a verified answer as follows:

"Now comes D. M. Martindale, respondent in the above and foregoing cause, and, for his answer to the information charging him with a violation of the order of injunction heretofore entered herein and praying that he be punished as for a contempt of this honorable court, states that he specifically denies each and every material allegation in said information contained, and requires of the plaintiff strict proof thereof. That upon a hearing hereof the respondent may be discharged and go hence without day."

A jury trial was afforded defendant, which resulted in a plurality verdict of guilty, signed by nine members of the jury. The evidence upon the trial showed that the defend-

ant. had been paid a fee of $75 in advance to appear in court and procure the dissolution of the temporary injunction against said premises; that after said preliminary fee had been paid him defendant proceeded to said premises and undertook to dissolve the injunction by forcibly removing the padlock and tearing off the notices of said injunction theretofore posted on said building by the acting sheriff. After having done this, the defendant notified Chartier and Miller that the injunction against said building "had been lifted," and that they were at liberty to occupy same and proceed with their business, which they accordingly did, and which action on their part resulted in this contempt proceeding.

The defense interposed is not that the defendant did not tear down the notices posted upon said building in pursuance of the court's temporary injunction, or that he did not remove or procure the removal of the padlock upon the door of said premises, or that he did not advise Miller and Chartier to again take possession of said premises, all in violation of said court's order, but it is contended that the proceedings upon which said temporary injunction was issued were void *ab initio,* and therefore it was no contempt on the part of this defendant to proceed to said premises, take a sledge hammer, or use whatever force was necessary to remove the padlock from the door and the notices from the building, and place said former occupants back therein, without applying to the court for a dissolution of said injunction.

*James H. Sykes, E. G. Wilson,* and *D. M. Martindale,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *W. C. Hall,* Asst. Atty. Gen., for the State.

MATSON, J.  (after stating the facts as above).  The legal propositions raised by this appeal will be considered in the order presented in the brief of counsel for plaintiff in error.

The first assignment of error attacks the sufficiency of the information upon which defendant was tried, and goes to the very foundation of the contempt proceeding, in that it is claimed by the defendant that the court is without authority to cite or punish a person for contempt in violating a temporary order of injunction issued under section 13, chapter 70, Session Laws 1911, in that there must have been a judgment finding the place to be a nuisance, in that it was a place where persons congregated and resorted for the purpose of drinking intoxicating liquors, etc., preliminary to the issuance of the temporary injunction, and that the information, failing to allege that such a judgment had been rendered upon notice to the parties affected, was insufficient to charge the crime under the provisions of said section 13 aforesaid.  That portion of said section 13, *supra,* applicable to the questions involved in this case, reads as follows:

"All places where any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; or any malt liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of the special tax required by the laws of the United States; is manufactured, sold, bartered, given away or otherwise furnished in violation of any provision of this act; and all places where such liquor is kept or possessed by any person in violation of any provision of this act; and all places

where persons congregate or resort for the purpose of drinking any such liquor, are hereby declared to be public nuisances, and upon the judgment of any court of record finding such place to be a nuisance under this section, the sheriff, his deputy, or undersheriff, or any constable of the proper county, or marshal or police of any city where the same is located, shall be directed to shut up and abate such place by taking possession thereof. * * * The Attorney General, county attorney, or any officer charged with the enforcement of any of the provisions of this act, of the county where such nuisance exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action, and no bond shall be required."

The order of injunction which the defendant was charged with violating was a temporary injunction issued at the commencement of the action, and issued pending an action for a permanent injunction on the grounds that the codefendants, Chartier and Miller, were maintaining a public nuisance on said premises in operating a whisky joint thereon in violation of law.

In the opinion of this court, the information states facts sufficient to constitute grounds for contempt of court against this defendant. Matters of inducement leading up to the issuance of the order of temporary injunction are clearly and distinctly stated in the information, as well as acts relied upon as being in violation of said order of injunction and contemptuous to the court.

It is provided by section 13, chapter 70, Session Laws 1911, among other things, "The injunction shall be issued. at the commencement of the action," and without bond,. either on relation of the county attorney or Attorney Gen--

eral. In *Smith et al. v. State ex rel. Gallagher, County Attorney,* 12 Okla. Cr. 513, 159 Pac. 941, this court held in effect that—

A temporary injunction "embodies a restraint which continues, unless modified by the court, until the hearing of the cause, and then it is either made permanent or discharged altogether."

Section 10, article 7, of the Constitution gives the district court authority to issue writs of injunction. Section 4872, Revised Laws 1910, provides as follows:

"Where the injunction is allowed during the litigation, and without notice of the application therefor, the order of injunction shall be issued and the sheriff shall forthwith serve the same upon each party enjoined, in the manner prescribed for serving a summons, and make return thereof without delay."

Section 4881, Id., in part provides as follows:

"* * * An injunction may be granted in the name of the state to enjoin and suppress the keeping and maintaining of a common nuisance. The petition therefor shall be verified by the county attorney of the proper county, or by the Attorney General, upon information and belief, and no bond shall be required, but the county shall, in all other respects, be liable as other plaintiffs."

The foregoing sections, being applicable to the procedure generally for obtaining a temporary order of injunction, are applicable in this proceeding. The record shows that the order of injunction was served upon each party enjoined in the proper manner and return thereof made, as provided in section 4872, supra. The trial court, having authority to issue a temporary order of injunction "at the commencement of the action and without bond," in a suit on the relation of the county attorney, and having obtained jurisdiction of the persons of the de-

fendants enjoined in said action by service of said order of injunction on them as required in section 4872, *supra,* obtained jurisdiction both of the parties to the action and the subject-matter thereof, and, subsequent to such jurisdiction having been obtained, the court had the inherent power to try and punish contemnors for violation of such order. *Farmers' State Bank of Texhoma v. State,* 13 Okla. Cr. 283, 164 Pac. 132, L. R. A. 1917E, 551.

The questions, therefore, of the sufficiency of the information and of the lack of jurisdiction of the court to punish defendant for contempt of such order are decided adversely to the contentions of counsel for defendant.

It is next contended that the court erred in excusing the juror H. E. Earne for cause at the instance of the county attorney. The court excused the juror after he had stated that he had at one time employed defendant, Martindale, as an attorney, but that such matter would not affect his verdict. The juror was excused over the objection and exception of the defendant. We think the matter of excusing this juror was within the discretion of the trial judge. *Beatty v. State,* 5 Okla. Cr. 105, 113 Pac. 237; *Collins v. State,* 15 Okla. Cr. 96, 175 Pac. 124. We see no abuse of discretion in this instance, and the action of the court in exercising his discretion by excusing such juror is not such prejudicial error as would justify a reversal of this conviction.

It is next contended that the court erred in overruling a challenge for cause made by the defendant against the juror Miller. It is contended in this connection that the juror Miller stated on his *voir dire* examination that he did not believe the court could make a void order, and that one is bound to carry out every order of the court as

long as the same stands unreversed. The questions propounded to the juror on his *voir dire* examination presented for the juror's consideration a legal test as to his knowledge of the distinction between orders of a court which are void and those which are voidable only, and the questions were to a large extent involved, and were not questions that pertained to any of the statutory grounds for the disqualification of a petit juror. In view of the fact that there is no showing that the defendant exhausted all his peremptory challenges to the trial jurors and was compelled for that reason to accept the juror Miller, we see no merit in this assignment of error.

An assignment of error based upon the court's action in overruling a challenge for cause to an individual juror will be of no avail unless there is an affirmative showing that the challenge for cause was well founded, and that the defendant was compelled to accept such disqualified juror by reason of having theretofore exhausted all of his peremptory challenges. *Tudor v. State,* 14 Okla. Cr. 67, 167 Pac. 341.

It is next contended that the court erred in refusing to permit the defendant to prove that James Wooley was the duly qualified and acting sheriff of Tulsa county at the time of the service of the temporary injunction, and that the deputy executing the writ was without authority because not appointed or acting under said Wooley.

The record shows that summonses and the temporary writ of injunction were each directed to James Patton, acting sheriff of Tulsa county, and returns on said summonses and writ show service on the defendants by James Patton, sheriff, by Walter Overby, deputy. It is not necessary to enter into a lengthy discussion on the merits of this assignment. It is sufficient to say that this was

not a proceeding to try the title to the office of sheriff of Tulsa county. It will be presumed in this case that the trial court knew, at the time of the issuance of the summonses and temporary writ of injunction, who was exercising the functions of the office of sheriff of that county, an officer of the court charged specifically with serving its writs and processes. 15 R. C. L. 1106, sec. 37.

It is next contended that the court erred in amending the verdict of the jury after it was returned into open court, and that the verdict as amended was never signed by the jury. The record relative to this assignment of error shows that the jury returned a verdict in the following form:

"We, the jury, drawn, impaneled and sworn in the above-entitled cause, do on our oaths find the defendant D. M. Martindale guilty as charged on the information herein.

"H. B. HAMILTON,               W. K. SHEPARD,
"E. R. GIDDINGS,               S. P. McBIRNEY,
"CHARLES E. GRAHAM,            E. UHRIG,
"FRANK SOWERS,                 B. E. HORRIGAN,
              "J. E. MILLER.

"Unable to agree on penalty."

The alleged informality in the foregoing verdict goes simply to the position in which the words, "unable to agree on penalty," appeared in said verdict. Such statement in the verdict did not constitute a prerequisite to a valid verdict in a contempt case, because the jury had nothing to do but determine the question of the guilt or innocence of the defendant. The punishment in such cases is left by the Legislature to be inflicted by the trial court. *Farmers' State Bank of Texhoma v. State,* 13 Okla. Cr. 283, 164 Pac. 132.

It is contended that the court erred in giving instruction No. 2, wherein the jury were told that in the event of finding the defendant guilty, they might fix his punishment, etc. Any error in the giving of this instruction became harmless, because the punishment was not fixed in the jury's verdict.

It is also contended that the court erred in refusing to give the following requested instruction, which action was excepted to at the time by the defendant, to-wit:

"The jury are instructed as a matter of law that the order of injunction heretofore entered in this cause, being granted by the court without the necessary judgment of the court provided by the statute, is a void order, and the respondent herein cannot be in contempt of such order."

The argument advanced is that the court had no jurisdiction to issue at the commencement of the action an order of injunction, and at the same time take possession of the property; that before such action could be taken there must have been a judgment of a court of record finding such place to be a public nuisance in that it was a whisky joint.

When section 13, ch. 70, Session Laws 1911, is construed in its entirety, there can be no doubt in the opinion of this court, as heretofore indicated in this opinion, that said section authorizes the trial court at the commencement of the action to issue a temporary order of injunction. Perhaps the action of the court in padlocking the building and placing same in the hands of the sheriff before any judgment declaring such place to be a public nuisance had been rendered was improvidently granted and irregularly obtained, but the order of injunction was not void for that reason, and therefore the cases cited by

counsel for the defendant are not applicable to this case; but the trial court, having jurisdiction of the original subject-matter, and having obtained by the issuance and service of summons jurisdiction of the parties to the injunction proceeding, and having a right under the statute to issue a temporary injunction at the commencement of the action without notice and without bond, both against the parties and the premises, its action in padlocking the premises and putting same in the hands of the sheriff before judgment did not have the effect of depriving the court of its jurisdiction theretofore obtained to issue the temporary order of injunction.

The rule applicable in this case is stated in Ruling Case Law, vol. 6, p. 505, sec. 17, as follows:

"While courts may enforce observance of their orders and injunctions generally, by recourse to contempt proceedings where these are violated, it is a general rule that no court can punish as for a contempt the disobedience of an order made without jurisdiction. The respondent may question the order which he is charged with refusing to obey, only insofar as he can show it to be absolutely void; he cannot be heard to say that it is merely erroneous, however flagrant it may appear to be, since judgments of courts cannot be attacked collaterally for mere irregularities. Hence the mere fact that an injunction was not justified by the facts of the particular case or was erroneous or improvident in any way is no defense, as the party has his remedy by appeal, and until vacated it binds him; and it is enough that the case belongs to a particular class of cases to which jurisdiction attaches."

We find no error, therefore, in refusing to give the requested instruction heretofore set out, and likewise the alleged error in giving instruction No. 4, involving the jurisdiction of the trial court to issue the temporary order of injunction, is not meritorious.

In assessing the punishment, the trial judge sentenced defendant to pay a fine of $1,000 and to serve six months in the county jail. The punishment for this offense is provided by section 13, chapter 70, Session Laws 1911, as follows:

"Any person violating the terms of an injunction granted in such proceeding, shall be punished, as for contempt, by a fine of not less than one hundred dollars nor more than five hundred dollars, or by imprisonment in the county jail not less than thirty days nor more than six months, or by both such fine and imprisonment."

The punishment assessed, therefore, by the trial judge was excessive in that the maximum fine which may be imposed is not more than $500, and the court imposed a fine of $1,000. That portion of the sentence providing for confinement in the county jail for a period of six months, however, is the maximum of imprisonment fixed by said statute.

Under the provisions of section 6003, Revised Laws 1910, this court has power to modify the judgment appealed from. A careful examination of all the facts and circumstances surrounding this contempt, and the punishment imposed therefor by the trial judge, convinces this court that the ends of justice would be best subserved by modifying the judgment to provide a fine of $500 and imprisonment in the county jail for a period of 30 days.

For the reasons stated, the judgment of the district court of Tulsa county finding the defendant, D. M. Martindale, guilty of indirect contempt of said court is modified by providing a fine of $500 and imprisonment in the county jail for a period of 3 days, and, as thus modified, the judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.