521 A.2d 1216

Jean **PENNINGTON**

v.

**STATE of Maryland.**

**No. 52, Sept. Term, 1986.**

Court of Appeals of Maryland.

March 9, 1987.

George E. Burns, Jr., Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender and José Felipé Anderson, Asst. Public Defender, Baltimore, on the brief), for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

MARVIN H. SMITH, Judge.

Appellant, Jean Pennington, was convicted in the Circuit Court for Baltimore City of a violation of Maryland Code (1957, 1982 Repl.Vol.) Art. 27, § 27, pertaining to obstruction of justice, upon her entering an *"Alford"* plea of guilty.[1] The charge stemmed from her having stabbed another woman in order to dissuade the woman from testifying in an assault case then pending in Baltimore City. The entire incident took place in the District of Columbia.

Pennington contended in the Court of Special Appeals and contends here that Maryland courts lack jurisdiction over the offense because every act attributed to her took place in the District of Columbia. The Court of Special Appeals disagreed with Pennington and affirmed her conviction. *Pennington v. State,* 66 Md.App. 710, 505 A.2d 895 (1986). We granted Pennington's petition for a writ of certiorari in order that we might consider the important public question here presented, one of first impression, not only in this State but elsewhere. We shall affirm.

Code (1974, 1984 Repl.Vol.) § 1–501, Courts and Judicial Proceedings Article, provides that our "circuit courts are the highest common-law and equity courts of record exercising original jurisdiction within the State." Each such court "has full common-law and equity powers and jurisdiction in all civil and criminal cases within its county, and all the additional powers and jurisdiction conferred by the Constitution and by law, except where by law jurisdiction has been limited or conferred exclusively upon another tribunal." Neither the Constitution nor the code specifically

---

1. An *"Alford"* plea is a guilty plea containing a protestation of innocence. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

addresses jurisdiction over the offense of obstructing justice.[2]   Under § 1–501 of the Courts Article, then, the ques-

---

2. Unlike Maryland, many states have enacted statutes which expand upon the criminal jurisdiction conferred by the common law.   Of these, several predate the Model Penal Code.   In addition, some 29 states have enacted or proposed jurisdiction statutes modeled on current § 1.03 ("Territorial Applicability") of the Model Penal Code or an earlier version thereof.   Model Penal Code § 1.03 comment, at 39–41 (1985).   At one time, adoption of a similar provision apparently was considered but rejected in Maryland.   *Id.* at 40 n. 12.   Section 1.03 of the Model Penal Code provides:

"(1) Except as otherwise provided in this Section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if:

(a) either the conduct that is an element of the offense or the result that is such an element occurs within this State;   or

(b) conduct occurring outside the State is sufficient under the law of this State to constitute an attempt to commit an offense within the State;   or

(c) conduct occurring outside the State is sufficient under the law of this State to constitute a conspiracy to commit an offense within the State and an overt act in furtherance of such conspiracy occurs within the State;   or

(d) conduct occurring within the State establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction that also is an offense under the law of this State;   or

(e) the offense consists of the omission to perform a legal duty imposed by the law of this State with respect to domicile, residence or a relationship to a person, thing or transaction in the State;   or

(f) the offense is based on a statute of this State that expressly prohibits conduct outside the State, when the conduct bears a reasonable relation to a legitimate interest of this State and the actor knows or should know that his conduct is likely to affect that interest.

"(2) Subsection (1)(a) does not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result.

"(3) Subsection (1)(a) does not apply when causing a particular result is an element of an offense and the result is caused by conduct occurring outside the State that would not constitute an offense if the result had occurred there, unless the actor purposely or knowingly caused the result within the State.

tion of jurisdiction in this case must be determined with reference to the common law.

The general rule under the common law is that a state may punish only those crimes committed within its territorial limits.[3] *See, e.g., Urciolo v. State,* 272 Md. 607, 325 A.2d 878 (1974); *Goodman v. State,* 237 Md. 64, 205 A.2d 53 (1964); *Bowen v. State,* 206 Md. 368, 111 A.2d 844 (1955); *Stout v. State,* 76 Md. 317, 25 A. 299 (1892). If the various elements of a given offense do not all occur within the borders of a single state, it becomes necessary to decide in which state or states the offense has been "committed." 1 W.R. LaFave & A.W. Scott, Jr., *Substantive Criminal Law* § 2.9 (1986) states that when the elements are thus scattered,

> "the common law picked out one particular act (or omission) or result of the act (or omission) as vital for the determination of the place of commission (i.e. the situs) of each of the various crimes and gave jurisdiction to that state ... where the vital act or result occurred. Generally, it may be said that the situs of a crime at common law is the place of the act (or omission) if the crime is defined only in these terms, and the place of the result if the

"(4) When the offense is homicide, either the death of the victim or the bodily impact causing death constitutes a 'result' within the meaning of Subsection (1)(a), and if the body of a homicide victim is found within the State, it is presumed that such result occurred within the State.

"(5) This State includes the land and water and the air space above such land and water with respect to which the State has legislative jurisdiction."

3. A widely recognized exception permits prosecution and punishment of larceny in any state into which the thief transports the stolen goods. At common law, every such asportation is deemed to be a new taking. *Worthington v. State,* 58 Md. 403, 409–10 (1882). In *Hamilton and Fletcher v. State,* 265 Md. 256, 259, 288 A.2d 885, 887, *cert. denied,* 409 U.S. 1006, 93 S.Ct. 445, 34 L.Ed.2d 298 (1972), Judge Finan said for the Court "that we agree with the views expressed in that opinion and that the doctrine of 'continuing larceny' is still viable in this State. We would add, that this appears to be in accord with the weight of authority in this country; *Larceny in Other State or Country,* 156 A.L.R. 865–866."

definition of the crime includes such a result." *Id.* at 180–81.

Likewise, R. Perkins & R. Boyce, *Criminal Law* ch. 1, § 3 (3d ed. 1982) states:

"[I]t came to be accepted that each crime has a particular situs. In any case of difference, for example, homicide is committed, not at the place from which the killer started the fatal force, but where it impinged upon the body of the victim. Thus when one standing in North Carolina fired across the boundary line a shot which hit and killed the victim in Tennessee, this was not a North Carolina crime but a Tennessee crime, and a conviction in North Carolina had to be reversed. To mention other examples, robbery is committed where the property is taken from the victim and not where he was first seized, or where the property was subsequently taken. Libel is committed at the place of publication, and bigamy where the bigamous ceremony is performed." *Id.* at 40–41 (footnotes omitted).

*See generally* 22 C.J.S. *Criminal Law* § 136 (1961 & Supp. 1986).

Maryland cases in which the particular situs of an offense has been identified for jurisdictional purposes include *Urciolo,* 272 Md. 607, 325 A.2d 878 (jurisdiction over embezzlement; there must be some act by the accused or his agent within the state); *Goodman,* 237 Md. 64, 205 A.2d 53 (no territorial jurisdiction over unlawfully obtaining narcotic drug by misrepresentation where the misrepresentation was made in Maryland but the prescription was filled in the District of Columbia); *Medley v. Warden,* 210 Md. 649, 123 A.2d 595 (forgery committed at place where the false instrument is uttered; fact that instrument was made in Virginia no bar to prosecution in Maryland), *cert. denied,* 352 U.S. 858, 77 S.Ct. 77, 1 L.Ed.2d 64 (1956); *Bowen,* 206 Md. 368, 111 A.2d 844 (larceny after trust and embezzlement; there can be no prosecution in Maryland of larceny after trust or embezzlement absent some act of conversion or appropriation within the jurisdiction); *Stout,* 76 Md. 317,

25 A. 299 (jurisdiction over murder prosecution exists in the state where the mortal blow was inflicted, notwithstanding fact that the victim died in another state); *Grindstaff v. State*, 57 Md.App. 412, 470 A.2d 809 (jurisdiction exists over bribery prosecution where the duties sought to be affected by the bribe offer were to be performed in Maryland, although the offer and payment occurred outside of Maryland), *cert. denied*, 299 Md. 655, 474 A.2d 1344 (1984); *State v. Jones*, 51 Md.App. 321, 443 A.2d 967 (1982) (jurisdiction exists over first degree rape prosecution where intercourse occurred outside of Maryland yet other essential elements occurred within Maryland), *vacated on other grounds*, 298 Md. 634, 471 A.2d 1055 (1984).

Two aspects of the principle of territorial jurisdiction merit mention in this case. First, as 1 *Wharton's Criminal Law* § 14 (C. Torcia 14th ed. 1978) states:

"Although a court has jurisdiction to subject an accused to prosecution only if the crime charged was committed within the territorial limits of the state wherein such court is sitting, the accused's actual presence in such state at the time the crime was committed is not necessary. As one court has put it, the accused's presence within a state 'need not be actual; it may be constructive. The well-established theory of the law is that where one puts in force an agency for the commission of crime, he in legal contemplation accompanies the same to the point where it becomes effectual.... So, if a man in the State of South Carolina criminally fires a ball into the State of Georgia the law regards him as accompanying the ball and as being represented by it up to the point where it strikes.' " *Id.* at 69 (quoting *Simpson v. State*, 92 Ga. 41, 17 S.E. 984 (1893)).

*Accord* W.L. Clark & W.L. Marshall, *A Treatise on the Law of Crimes* § 3.02, at 148 (M. Barnes ed. 1967); *Urciolo*, 272 Md. at 631, 325 A.2d at 892. *See generally* Annotation, *Absence from State at Time of Offense as Affecting Jurisdiction of Offense*, 42 A.L.R. 272 (1926).

Second, as observed by LaFave and Scott, *supra:*

"Generally, it may be said that the situs of a crime at common law is the place of the act (or omission) if the crime is defined only in these terms, and the place of the result if the definition of the crime includes such a result." *Id.* at 180–81.

The Court of Special Appeals applied this theory in *Grindstaff,* 57 Md.App. 412, 470 A.2d 809, in upholding a bribery conviction where all of the elements of the offense save the intended result occurred in the District of Columbia:

"In the instant case the crime charged was the corrupt offering of something of value to a Mt. Rainier, Maryland police officer to influence the performance of his official duties in Maryland. The false report was to be made concerning his business in Maryland. We think this case is akin to those involving the offense of obstruction of justice. The gravamen of the crime was the intended result in Maryland. Thus, in *In re Special Investigation No. 224,* 54 Md.App. 137, 144, n. 1, 458 A.2d 454 [, *cert. denied,* 296 Md. 414] (1983), Judge Moylan, writing for this Court, stated:

*United States v. Kibler,* 667 F.2d 452 (4th Cir.1982), held that jurisdiction over an obstruction of justice case properly lay in the District of Maryland, although the threats upon a witness which represented the obstruction had occurred in the District of Columbia. The Court held, at 454, '[T]he situs of the crime is the place of the judicial proceeding that the accused sought to thwart.'" 57 Md.App. at 416–17, 470 A.2d at 812.[4]

Similarly, commentary to the Model Penal Code contains the observation that "[b]oth the decisions and the statutes generally affirm state jurisdiction" where causing a particular result constitutes an element of the offense "and the result is caused within the state by conduct occurring in another jurisdiction in which such conduct is lawful." Mod-

---

**4.** *United States v. Kibler,* 667 F.2d 452 (4th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982), was a federal obstruction of justice case addressing the question of proper venue.

el Penal Code § 1.03 comment, at 45 (1985) (citing, among other authorities, *Medley*, 210 Md. 649, 123 A.2d 595, and *State v. Kriss*, 191 Md. 568, 62 A.2d 568 (1948)).

Manifestly, causing or attempting to cause a particular result—the obstruction of justice—forms an essential ingredient of the offense here involved:

> "If any person by corrupt means or by threats or force endeavors to influence, intimidate, or impede any juror, witness, or court officer of any court of this State in the discharge of his duty, or by corrupt means or by threats or force obstructs, impedes, or endeavors to obstruct or impede the due administration of justice therein, he is liable to be prosecuted, and on conviction to be punished by fine not exceeding $10,000, or by imprisonment not exceeding 3 years, or both, according to the nature and aggravation of the offense." Code (1957, 1982 Repl.Vol.) Art. 27, § 27.

In a decision involving issues not germane to the present case,[5] this Court construed an earlier but substantially similar version of Art. 27, § 27, then Code (1939) Art. 27, § 30.[6] *See Romans v. State*, 178 Md. 588, 592, 16 A.2d 642, 644 (1940), *cert. denied*, 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1131 (1941). The Court stressed the importance, relative to

---

5. The precise issue before the Court was whether the counts in an indictment were duplicitous. The Court held they were not, pointing out that the statute contained "alternate provisions" forbidding the obstruction of justice and therefore a single act could not amount to two offenses under the statute. *Romans v. State*, 178 Md. 588, 592, 16 A.2d 642, 644 (1940), *cert. denied*, 312 U.S. 695, 61 S.Ct. 732, 85 L.Ed. 1131 (1941).

6. The cited section provided:
"If any person shall corruptly or by threats or force endeavor to influence, intimidate or impede any juror, witness or officer in any court of this State in the discharge of his duty, or shall corruptly or by threats or force obstruct or impede, or endeavor to obstruct or impede, the due administration of justice therein, he shall be liable to be prosecuted therefor by indictment, and shall on conviction thereof be punished by fine not exceeding five hundred dollars, or by imprisonment not exceeding three months, or both, according to the nature and aggravation of the offense."

the other elements of the offense, of the result element. Initially, the Court noted that the section does not enumerate the various acts which may amount to an obstruction of justice:

"The statute is in aid and definition of a class of those criminal acts which are known to the common law as obstructions of justice. The words of the statute are general and embrace in comprehensive terms various forms of obstruction. Thus the particular acts are not specified...." 178 Md. at 592, 16 A.2d at 644.

The Court then pointed out that irrespective of the identity of the immediate victim, the ultimate victim is inevitably the court: [7]

"Furthermore, it is quite clear that the corrupt act, or one of threat or force, employed to influence or intimidate or impede any such juror, witness, or officer in the discharge of his duty in a court, must necessarily be, also, an endeavor to obstruct or impede in such court the due administration of justice." 178 Md. at 592, 16 A.2d at 644.

Our research has disclosed no reported state court decision determining whether, under the common law, jurisdiction over an obstruction of justice charge exists where all of the affirmative acts were committed without the forum state's borders.[8] *But c.f. State v. Jones,* 39 N.M. 395, 48

---

7. In the case at bar, the Court of Special Appeals aptly remarked, "It seems to us that the appellant confuses an assault on [the witness] with an assault on the Maryland criminal justice system. While the former may more properly concern the District of Columbia, the latter is of primary concern to this State." 66 Md.App. at 711, 505 A.2d at 896.

8. Both the Court of Special Appeals and the State consider persuasive federal obstruction of justice cases in which the question of venue, as opposed to jurisdiction, was at stake. Cases holding that venue lies in the district of the judicial proceedings sought to be obstructed include *United States v. Reed,* 773 F.2d 477 (2d Cir.1985) (overruling *United States v. Brothman,* 191 F.2d 70 (2d Cir.1951)); *United States v. Johnson,* 713 F.2d 654 (11th Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984); *United States v. Kibler,* 667 F.2d 452

P.2d 403 (1935). In that case a witness in a New Mexico proceeding was approached in New Mexico relative to not testifying in the proceeding. The money was paid in Texas. The court said:

"The crime was not consummated in Texas, as contended for by the defendants ... but in Dona Ana county, N.M., where witness Rhyne was first approached and offered a bribe to abstain from testifying." 39 N.M. at 400, 48 P.2d at 405–06.

The State contends, nonetheless, that jurisdiction in this case falls squarely within the common law, i.e., that the situs of the offense is the location of the judicial proceedings sought to be obstructed.

Maryland decisional law furnishes some, albeit indirect, support for the State's position. In *Kriss*, 191 Md. 568, 62 A.2d 568, a habeas corpus case, the petitioner was charged in North Carolina with conspiracy to violate the alcoholic beverage laws of that state. He was never present in North Carolina during the commission of the offense, but rather allegedly caused the transportation and sale of liquor to bootleggers in North Carolina while in Maryland. North Carolina demanded his extradition pursuant to the Uniform Criminal Extradition Act. Code (1939) Art. 41, § 18 then stated:

"The Governor of this state may ... surrender, on demand of the Executive Authority of any other state, any person in this state charged in such other state ... with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand ... *even*

---

(4th Cir.), *cert. denied,* 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982); *United States v. Tedesco,* 635 F.2d 902 (1st Cir.1980), *cert. denied,* 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981); *United States v. O'Donnell,* 510 F.2d 1190 (6th Cir.), *cert. denied,* 421 U.S. 1001, 95 S.Ct. 2400, 44 L.Ed.2d 668 (1975). The federal circuits, however, do not unanimously agree on this point. *See, e.g., United States v. Nadolny,* 601 F.2d 940 (7th Cir.1979); *United States v. Swann,* 441 F.2d 1053 (D.C.Cir.1971), to the contrary.

*though the accused was not in that state at the time of the commission of the crime,* and has not fled therefrom." (Emphasis added.)

In upholding the constitutionality of § 18 and finding that the extradition papers complied with its requirements, Judge Markell stated for the Court:

"It is not inconsistent to lay the venue of the crime, in the warrant, in North Carolina, though petitioner was not in North Carolina. 'Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.' *Strassheim v. Daily,* 221 U.S. 280, 285, 31 S.Ct. 558, 560, 55 L.Ed. 735 [1911]." [9] 191 Md. at 575, 62 A.2d at 570.

*Strassheim v. Daily,* 221 U.S. 280, 31 S.Ct. 558, 55 L.Ed. 735 (1911), upon which the *Kriss* Court relied, also involved the validity of extradition proceedings. Daily was indicted in Michigan for bribing a Michigan prison warden and obtaining money from the State of Michigan by false pretenses. The indictment alleged in essence that Daily bribed the officer to allow Daily to fraudulently substitute second-hand machinery in a contract between Daily and the state, under which Daily was supposed to furnish new machinery. The issue before the Court was whether Daily qualified as a fugitive from justice from Michigan, since virtually all, but not quite all, of Daily's criminal conduct occurred in Illinois.[10] In holding that Daily was a fugitive from justice, Justice Holmes said for the Court:

"If a jury should believe the evidence and find that Daily did the acts that led [the prison warden] to betray [the warden's] trust, deceived the [State agency with which Daily contracted], and induced by fraud the payment by

---

9. Despite its use of the term "venue," there can be little doubt but that the Court was referring to jurisdiction.

10. The contract bid and acceptance took place while Daily was present in Michigan.

the State, the usage of ·the civilized world would warrant Michigan in punishing him, although he never had set foot in the State until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power. *Commonwealth v. Smith,* 11 Allen, 243, 256, 259. *Simpson v. State,* 92 Ga. 41 [17 S.E. 984]. *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 356 [29 S.Ct. 511, 512, 53 L.Ed. 826]. *Commonwealth v. Macloon,* 101 Mass. 1, 6, 18." 221 U.S. at 284–85, 31 S.Ct. at 560, 55 L.Ed. at 738.

Although *Kriss* and *Strassheim* concerned extradition proceedings, the principles enunciated in those cases have received attention in a few subsequent Maryland cases involving the question of criminal jurisdiction. In the forgery case of *Medley,* 210 Md. 649, 123 A.2d 595, the Court made the general observation:

"Jurisdiction over the subject-matter may attach where acts are performed in one state with the intention of producing an illegal effect in another, or where the crime is consummated. *State v. Kriss,* 191 Md. 568, 575 [62 A.2d 568]; *Restatement, Conflict of Laws,* § 65, and § 428. See also *Bloomer v. State,* 48 Md. 521, 535, and *Stout v. State,* 76 Md. 317 [25 A. 299]." 210 Md. at 652, 123 A.2d at 596.[11]

*See also Urciolo,* 272 Md. at 631, 325 A.2d at 892. *Grindstaff,* 57 Md.App. 412, 470 A.2d 809, which we have. earlier discussed, in turn relied upon *Kriss, Strassheim,* and *Urciolo* in holding that jurisdiction over bribery exists at the

---

**11.** The Restatement of the Conflict of Laws focuses largely on jurisdiction conferred by statute. For example, comment b to Section 428 remarks, "[a] state may *by statute* make criminal and punish any result happening within the state of an act done outside the state." (Emphasis added.) Section 65, also cited by the *Medley* Court, addresses the exercise of *legislative* jurisdiction.

locus of the duties sought to be influenced. 57 Md.App. at 416, 470 A.2d at 811–12.

The stabbing here constituted two crimes, the assault and the obstruction of justice. The first, which trammeled upon the woman's rights, was an offense against District of Columbia law. However, in the second, the obstruction of justice, as in *Grindstaff,* no individual's rights were trammeled upon, but the offense is against the State itself. It thus would appear to make sense to view the gravamen of those crimes as being the injury to the State and to conclude that jurisdiction exists where the offended agency of the State is located. In addition to *Grindstaff,* at least one other state court decision appears to espouse this attitude toward crimes against government.[12] In *Commonwealth v. Welch,* 345 Mass. 366, 187 N.E.2d 813 (1963), a public official of Massachusetts, who illegally accepted a gift of money while in Rhode Island, contended that Massachusetts

---

**12.** The Model Penal Code, however, does not make special provision for jurisdiction in those circumstances. The comment to Section 1.03 observes:

"Attempt and conspiracy are not the only crimes that are so defined that the occurrence of the ultimate result that it is the object of the law to prevent is not made an element of the offense, and conduct animated by a purpose to cause that result suffices to establish the offense. Many specific substantive offenses have a similar inchoate aspect, attaching liability to described conduct when performed with a particular purpose. However, if the conduct takes place outside the state, Subsection (1)(a) does not establish jurisdiction, even though the actor's purpose is to cause the offensive result within the state. Is there less persuasive ground for jurisdiction in such cases in the state in which it is the actor's purpose to effect the ultimate result than in the case of the conventional attempt to commit a crime in a state?

"For example, a kidnapping might take place in State *A* with the purpose 'to interfere with the performance of' a 'governmental function' in State *B,* a bribe might be offered, conferred, solicited or received in one state with the corrupt performance planned to take place in another, a writing forged to facilitate a fraud or injury in another jurisdiction, or a witness approached outside the state in which he has been summoned to appear. This case was not explicitly considered by the Institute. It is obviously arguable that the Code should be expanded to permit such jurisdictional assertion."

Model Penal Code § 1.03 comment c, at 51–52 (footnotes omitted).

courts lacked jurisdiction over the offense. The Supreme Judicial Court of Massachusetts disagreed, explaining:

"The defendant was a public official of a municipality in Massachusetts. It was an offence in violation of a Massachusetts statute and the harm was to the municipality. The physical act of handing over the money was but one step in the commission of the offence. An offender cannot evade guilt under this statute by the simple expedient of stepping across our State border for the sole purpose of accepting the money." 345 Mass. at 370–71, 187 N.E.2d at 816 (citations omitted).

*Graham v. Lanning*, 698 P.2d 25 (Okla.Crim.App.1985), dealt with the question of jurisdiction over the offense of perjury. The defendant in that case was accused of committing perjury during the course of a deposition videotaped in Texas and subsequently used as evidence in an Oklahoma civil case. Based on a statute conferring jurisdiction over crimes "consummated" within Oklahoma, that state's Court of Criminal Appeals held that the defendant could be prosecuted in Oklahoma for the perjury. Among other things, the court observed, "It is the citizens and courts of Oklahoma, not Texas, who are injured by the perjury alleged to have been committed." 698 P.2d at 27.

As indicated in n. 8, the Court of Special Appeals relied upon cases arising under the federal obstruction of justice statute, which cases concern venue. The federal statute is codified at 18 U.S.C. § 1503 (1982). In *United States v. Tedesco*, 635 F.2d 902, 905 (1st Cir.1980), *cert. denied*, 452 U.S. 962, 101 S.Ct. 3112, 69 L.Ed.2d 974 (1981), the court said, "The source of this section is the Act of March 2, 1831, 4 Stat. 487, which outlined the contempt jurisdiction of the federal courts." On this subject Chief Judge Winter said in his dissent in *United States v. Kibler*, 667 F.2d 452 (4th Cir.), *cert. denied*, 456 U.S. 961, 102 S.Ct. 2037, 72 L.Ed.2d 485 (1982):

"It seems to me that the purpose of § 2 of the Act of March 2, 1831 which was the predecessor of 18 U.S.C. § 1503, *see Nye v. United States*, 313 U.S. 33, 45–48, 61

S.Ct. 810, 814–815, 85 L.Ed. 1172 (1941), was to remove the courts' power to punish for constructive contempts and to require that such proceedings be conducted by the normal process of indictment, trial and conviction, including normal rules with respect to venue." 667 F.2d at 456.

Accordingly, we turn to what has been said relative to acts of indirect or constructive contempt said to have taken place beyond the confines of the state in which the offended court is situated. On this subject 17 C.J.S. *Contempt* § 64 (1963) states:

"The fact that the acts constituting contempt occurred outside the territorial jurisdiction of a court does not deprive it of jurisdiction, nor will a court lose jurisdiction properly acquired by modifying an incorrect judgment, or by delaying for a reasonable time, or by the erroneous exclusion of evidence negating contempt. Where matter is alleged as in contempt of court having jurisdiction of contempts and jurisdiction of the person is obtained, the court possesses all elements of jurisdiction to authorize it to proceed and determine all other questions in the case, including the sufficiency of the complaint or charges and the questions of law relevant thereto. The court which renders the order commanding the doing of a certain act by a person or a public body is alone vested with the right to determine, on a rule for contempt for failure to comply with the order, whether the order has been complied with or a sufficient reason given for failure to comply therewith." 17 C.J.S. at 167 (footnotes omitted).

Cases cited by C.J.S. for the proposition that courts have jurisdiction over acts committed without their state are *Sullivan v. United States,* 4 F.2d 100 (8th Cir.1925); *Hunter v. United States,* 48 App.D.C. 19 (1918); *Prine v. State,* 143 Miss. 231, 108 So. 716 (1926); *Snow v. Hawkes,* 183 N.C. 365, 111 S.E. 621 (1922); and *Farmers' State Bank of Texhoma v. State,* 13 Okl.Cr. 283, 164 P. 132 (1917). In *Hunter* the defendant's son had been convicted in the juvenile court of the District of Columbia of disorderly conduct. Sentence was suspended and he was placed upon

probation. Permission was given the defendant to place his son in a school at Annapolis, as the court put it, "upon condition that he remain there for the period of one year, his probation to continue in force." It came to the attention of the court that the boy had been removed from the school by his father in violation of the order of the court. The father was cited for contempt. He claimed that the alleged contempt was committed in Maryland. In disposing of this contention the court said:

"The fact that the offense was committed at a point remote from the court, in an adjoining State, is of no importance. The question is not one of geography or topography, or propinquity or remoteness, but one of direct influence upon the administration of justice. The administration of justice is equally obstructed wherever the act is done; and the place of the solicitation is absolutely of no consequence whatever. Whether the act was done in the courthouse, or a mile or 100 miles away, the result is precisely the same; the disturbance to the court is precisely the same. The act in its nature is not dependent upon location for its greater or less influence on the administration of justice.' *McCaully v. United States*, 25 App.D.C., 404, 413 [ (1905) ]." 48 App.D.C. at 24–25.

*Snow*, 183 N.C. 365, 111 S.E. 621, involved a contempt of a North Carolina court. The court said:

"The second objection involves a question of jurisdiction, but in our opinion it cannot avail the respondent. It is true that the plaintiff's signature to the alleged agreement was procured in Virginia, and that the court had no extra-territorial jurisdiction; but since the respondent appeared in court, answered the rule, and made his defense the question of jurisdiction is material only as it relates to the operation and ultimate effect of his wrongful act. It is perfectly obvious that the respondent's paramount object was to secure dismissal of the plaintiff's suit by fraud, deceit, and imposition on the court. The imposition was to be consummated in the county where the action

was pending through an unlawful scheme which was intended to be not only continuing, but coextensive with the illegal purpose, and therefore operative in the Superior Court of Surry. The respondent's act is plainly embraced in the provisions of the statute to which we have referred and the mere fact of his absence at the time he put the agency in motion cannot absolve him from the imputation of constructive contempt." 183 N.C. at 368, 111 S.E. at 623.

C.J.S. comments that the reason for the rule is given in *Farmers' State Bank of Texhoma*, 13 Okl.Cr. 283, 164 P. 132. There the court said:

"The principal and most serious contention relied upon by plaintiff in error is that contempt is criminal in its nature, and, since all the acts constituting the contempt were committed in the State of Texas, that the district court of Texas county, Okla., had no jurisdiction to try or punish plaintiff in error for contempt by reason of these acts. But plaintiff in error fails to distinguish the difference between contempt and other criminal acts. Murder, larceny, arson, and such offenses in law are considered as an offense against the peace and dignity of the state; hence the jurisdiction to try and punish a person for such offenses is placed alone in the hands of the particular county and state against which the offense has been committed. But contempt is an offense against the dignity and authority of the particular court to which the affront is offered. If that court is willing to overlook and condone the insult, no other court, even in the same county, has a right to interfere. But if a court has jurisdiction of the parties, and the subject-matter out of which an indirect contempt grows, the affront is none the less directly against the dignity and authority of that court, no matter to what county or state the offender may go to violate the order of the court. If that were not true, then injunction orders in many instances would be a farce. It would be ridiculous to say that an order enjoining the sale of personal property, over which the court

had jurisdiction, could be violated with impunity, if the litigant only took the pains to cross the state line before disposing of it. And it makes no difference as to the character of the property, whether real or personal, or where it is situated; if the court has jurisdiction to enjoin its sale, a violation of that order, wherever committed, is an offense against the dignity and authority of the court making the order, and that court, and that court alone, has the right to punish or complain. And it has that right, regardless of the location or the place to which the contemnor may have gone to violate its order. This distinction, to our minds, is so clear and essential that we deem it unnecessary to discuss that feature further." 13 Okl.Cr. at 284–85, 164 P. at 132.

To this list could be added *Turquette v. State*, 174 Ark. 875, 298 S.W. 15 (1927), although the author of the opinion apparently did not fully concur in the views of the court. The City of Texarkana is situated in both the states of Texas and Arkansas. A judge of the municipal court of Texarkana, Arkansas, was assaulted in Texarkana, Texas. His assailant was cited in Arkansas for contempt. The court said:

"In short, the trial judge was warranted in finding that the assault was made for the purpose of influencing the municipal court in the trial of the case against Turquette, and that, while the assault was committed in the State of Texas, it was so near the municipal courthouse in the State of Arkansas that it should be considered as to have been consummated there, and, for that reason, it was committed in the constructive presence of the court. The writer believes the better view is to hold that, the act having been committed outside of the territorial jurisdiction of the courts of the State of Arkansas, Turquette was not guilty of contempt." 174 Ark. at 879, 298 S.W. at 16–17.

Under the heading of "venue," R. Goldfarb, *The Contempt Power* (1963), after referring to the fact that the venue provision of U.S. Const. amend. VI is now embodied

in the Federal Rules of Criminal Procedure and that the Federal Rules of Civil Procedure specify that civil actions will be tried only in a judicial district where all defendants reside, states:

> "These are logical rules since in both civil and criminal contempts, that wrong which is committed is directly or indirectly one to the court controlling the main action. In cases of contempt by publication this rule could become awkward. Take, for example, the hypothetical case of a California newspaper which publishes a contemptuous article about a pending New York proceeding. The New York court having plenary jurisdiction over the subject matter, must have the controlling power elsewhere, as well. The contempt is to the New York court, although it might seem that the offensive act really took place in California. This problem has arisen most often in injunction cases, where court orders were violated in different districts from that of the court which issued the order. The decisions have uniformly upheld the power of the first court to deal with the contempt. As it was written in ... *Dunham* [*v. U.S.*, 289 F. 376 (5th Cir.1923)]:

>> A proceeding for contempt springs out of a litigation instituted in a particular court.... Its principal object is to secure obedience to the orders of that court, by punishing as a contempt disobedience thereof. It is the court whose judgment or order has been defied which must try the contempt and pronounce judgment.... If the place of the trial for a criminal contempt must be in the district where the acts constituting it were committed, then where such acts were committed in a different district than that of the court whose order has been contemned, such court would be powerless to deal punitively with the violation of its injunctive orders, and the trial and punishment of such contempt would have to be by a different court than that whose order had been defied. This would clearly be an alteration of the entire idea of a contempt, and in derogation of the

power of a court to deal with violators of its orders."
*Id.* at 258–59 (footnotes omitted).

As we have already observed it was justice in the State of Maryland that was obstructed by the act of the appellant. Accordingly, given what has been said by the treatise writers and our own cases, citing such treatises, as to the situs of a crime being the place of the result where the definition of a crime, as here, includes such a result, and the constructive contempt analogy, we hold that the Maryland court had jurisdiction.

JUDGMENT AFFIRMED: APPELLANT TO PAY THE COSTS.