477 A.2d 787

**Debra Lynn CELLANO**

v.

**Catherine C. FARBO.**

**No. 1414, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

July 13, 1984.

Will Abercrombie, Jr., Baltimore, for appellant.

Harry Goldman, Jr., Baltimore and Robert G. Skeen, with whom were Goldman & Skeen, P.A., Baltimore, on the brief, for appellee.

Before MOYLAN, BLOOM and BELL, JJ.

BLOOM, Judge.

After granting a default judgment as to liability against the appellant, Debra Lynn Cellano, the Circuit Court for Baltimore City conducted an inquest to determine the damages sustained by the appellee, Catherine C. Farbo, in a motor vehicle collision. As a result of the inquest, a judgment was entered in favor of the appellee for $45,742.99. We will vacate that judgment because it is tainted by a deception practiced upon the court.

Appellee's action was brought against appellant and Keystone Insurance Corporation, appellee's uninsured motorist insurance carrier. Keystone is not a party to this appeal. Appellant appeared by counsel and pleaded in bar of the action but subsequently failed to obey an order for discovery, as a result of which the default judgment was entered on April 26, 1982. Appellee promptly requested an inquisition by jury to determine damages in accordance with Md.Rule 648. The case was then placed on the court's jury trial docket for June 25, 1982.

Ms. Cellano's attorney was scheduled to begin a jury trial in another case (hereinafter referred to as the Pineda case) in the same court on June 21. The Pineda case was not

called for trial on June 21 because the docket was so congested that there was no judge or courtroom available for the trial of that case. In accordance with the court's normal procedure, the Pineda case was not removed from the jury trial docket to be rescheduled for a later date but remained on the docket awaiting its turn for trial on a day-to-day basis, while cases that had been set for jury trial subsequent to the Pineda case (including *Farbo vs. Cellano*) began to stack up on a waiting list.

The trial of the Pineda case began on the afternoon of June 24. As of then, *Farbo vs. Cellano* was number 19 on the jury trial docket, so counsel for Ms. Cellano was sure that it could not possibly be reached for trial before he finished trying the Pineda case. His appraisal of the court's jury system was correct, but he underestimated his opponent.

Angered by what he perceived to be the cavalier manner in which defense counsel had treated him and his case and, perhaps, frustrated by a system that threatened what he considered to be an unnecessary delay in bringing his case to a just conclusion, plaintiff's attorney conceived of a clever device to cut through the judicial red tape and by-pass opposing counsel at the same time. He merely appeared for trial on June 25 armed with a written motion to waive inquisition by a jury and to request inquisition by the court, as authorized by Rule 648. In that manner he and the case of *Farbo vs. Cellano* were referred to a nonjury courtroom and a judge available to hear the case then and there.

Defense counsel, of course, was not present. He had received no notice of the motion to waive inquisition by jury and was thus totally and blissfully unaware of the proceedings about to take place in the nonjury courtroom. Counsel for Keystone Insurance Company, however, was present. Plaintiff's counsel had served him with a copy of the jury waiver motion, although Keystone had no real interest in the inquisition. The proceedings began with the following colloquy:

MR. GOLDMAN: Robert G. Skeen and Harry Goldman, Jr., for the plaintiff. There is an appearance by Will Abercrombie for the defendant. Let the record show that Mr. Abercrombie is not here.

The plaintiff moves to waive inquisition by jury and proceed to inquisition by the court alone.

THE COURT: Who do you say Mr. Abercrombie represents?

MR. GOLDMAN: Cellano. He will not be here, I am reliably informed.

THE COURT: So that the defendant will not be represented.

MR. GOLDMAN: The defendant is represented by counsel. Counsel chooses not to appear. He will not appear.

THE COURT: But in this matter—

MR. GOLDMAN: They will not be represented in this matter.

THE COURT: He advised you accordingly?

MR. GOLDMAN: We were reliably informed that he will not be here.

THE COURT: Very well.

MR. GOLDMAN: Your Honor, will the court grant our Motion to Waive Inquisition by jury and allow inquisition without the jury?

THE COURT: I sure shall.

The inquisition then proceeded *ex parte*. On the basis of the evidence presented, the court rendered a judgment nisi in the amount of $45,742.99. Judgment absolute was entered on June 30; on July 3, appellant moved to set the judgment aside. As of then, there was no transcript of the June 25 proceedings and appellant was unaware of Mr. Goldman's representations to the court. Her motion, therefore, was based primarily upon lack of notice of the waiver of jury trial. Appellant's motion was initially granted because the court believed that she was entitled to a jury trial. On reconsideration, the court reinstated the judgment when

it was pointed out that under Md.Rule 343e, after entry of a judgment by default, an election for jury trial may be withdrawn by the party not in default, with or without the approval of the defaulting party. From the record, it is clear that the trial judge did not recall what Mr. Goldman had told him about defense counsel's absence. He had only a vague recollection of an impression that the defendant did not intend to appear at the inquisition. Upon joint motion, the court directed the entry of a final judgment despite the unresolved claim against Keystone, determining, as permitted by Md.Rule 605a, that there was no just reason for delay. This appeal followed the entry of that final judgment.

■ Appellee asserts that counsel for appellant had been notified of the June 25 trial date, that appellee's election to proceed with a non-jury inquisition was permitted by the rules of procedure, and that counsel for appellant was charged with the duty to keep abreast of all developments in all cases in which his appearance was entered. All of those assertions are true, but none of them are relevant to this appeal.

Appellee charges appellant's attorney with negligence in failing to be aware of what was happening in the case and in failing to be "in court," *i.e.*, before the judge who conducted the inquisition, on June 25. We have no reason to doubt, however, that appellant's attorney did inquire as to the status of this case on the afternoon of June 24. But whether he did so or not is not material; if he had inquired immediately before he stepped into the other courtroom to resume the trial of the Pineda case, he would have been told that *Farbo vs. Cellano* was still far down the list on the jury trial docket and, therefore, had not been assigned to a judge or courtroom.

■ Appellee's contention that she had a right to withdraw her election for jury trial without the consent of appellant is correct. Md.Rule 343e does require, however, that withdrawal of the election for jury trial be in writing. We note that, although appellee includes in the appendix to

her brief a copy of what purports to be a written "Motion To Waive Inquisition By Jury" accompanied by an affidavit to the effect that the original of that document was handed to the inquisition judge on June 25, no such written motion appears in the court's record and there is no reference to such motion in the docket entries. Recognizing that handing a document to a judge is not exactly the same as filing it, appellee now relies upon Md.Rule 321. Section a of that rule provides that motions, "except such as may be permitted to be introduced in open court (before trial, or during the course of trial)" shall be in writing; section c requires that a copy of a motion must be served upon the party affected by it but provides that this requirement does not apply to motions introduced in open court before or during the course of trial.

It is questionable whether withdrawal of election for a jury trial, required by Rule 343e to be in writing even in default cases, is the type of motion "permitted [by Rule 321a] to be introduced in open court" on an *ex parte* basis. We will not decide this case on that point, however, because we believe it is more important to reach an issue that is fundamental to the judicial process.

Appellee's counsel insists that the words spoken to the inquisition judge, quoted above, were true. Technically, he is correct. But even though the words were true, the message was false. As the English writer and critic John Ruskin observed, "The essence of lying is in deception, not in words." [1]

There can be no question but that the court was deceived. Counsel's words may have been equivocal, but his message was clear: Judge, although there is an attorney of record for the defendant, this is now a default case and defense counsel has no intention or desire to appear. Plaintiff's counsel knew that message was false. When Abercrombie refused to stipulate to medical reports, he made it clear that he intended to appear at the inquisition to contest the

---

1. *Modern Painters,* Vol. V, pt. 9, ch. 7.

damages. As he stated to us during oral argument, counsel for the appellee felt that trial of the case had already been delayed; that if the case remained on the jury docket, it would not be reached until September; that he had a right to waive the jury trial with or without approval of the defendant; that since defendant was in default, she was not even entitled to notice of the waiver; and that it was defense counsel's responsibility to be "there" on June 25. If the court had been aware, as Mr. Goldman was, that defense counsel had every intention of participating in the inquisition but was then engaged in trying another case and was unaware of the latest procedural maneuver, it surely would not have proceeded with the inquisition at that time; if the court had then had before it a transcript of Mr. Goldman's misleading remarks, it surely would have stricken the inquisition judgment.

Regardless of the merits of appellee's case or the value of her claim, we simply cannot permit a judgment obtained under these circumstances to stand.

JUDGMENT VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS WITH INSTRUCTIONS TO VACATE THE INQUISITION AND JUDGMENT THEREON.

COSTS TO BE PAID BY APPELLEE.