570 A.2d 328

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Roger SCHLOSSBERG, Trustee.**

**No. 745, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

March 1, 1990.

Patrick A. O'Doherty (Amy J. Muffolett, on the brief), Baltimore, for appellant.

Robert R. Michael (George W. Shadoan, on the brief), Rockville, for appellee.

Argued before MOYLAN, FISCHER and CATHELL, JJ.

FISCHER, Judge.

Appellant, State Farm Mutual Automobile Insurance Company (State Farm), appeals from a default judgment

entered in the Circuit Court for Prince George's County and the assessment of damages in the amount of $1,163,534.36.[1]

The instant litigation arose from a prior suit in which State Farm's insured, Jorgen L. Larsen (Larsen), was sued along with David W. Watkins (Watkins) for the wrongful death of a fifteen year old boy, Thomas J. Sexton, III. That case was tried in the the Circuit Court for Prince George's County from July 27, 1982 through August 5, 1982. The jury found for the plaintiffs against both defendants in the amount of $502,412.11. Watkins was insured in the amount of $20,000 and Larsen $50,000.

Unable to pay the balance of the judgment, Larsen filed for protection of the United States Bankruptcy Court, and on May 31, 1985, Roger Schlossberg (trustee), trustee of Larsen's bankrupt estate, filed suit against Larsen's attorney Phillip E. Epstein (Epstein). On August 1, 1985, an amended complaint was filed joining State Farm's attorney, Marvin B. Miller (Miller), and State Farm as defendants. The latter case is the subject of this appeal. Both Epstein and Miller were dismissed as defendants prior to the appeal now under consideration and are no longer involved in this case.

Before us is the second appeal in the course of this litigation. Pursuant to motions filed by the defendants, summary judgment was entered on February 27, 1987 in favor of Epstein, Miller and State Farm. On January 6, 1988, this Court reversed the judgments and remanded the case to the Circuit Court for Prince George's County for further proceedings. *Schlossberg v. Epstein*, 73 Md.App. 415, 534 A.2d 1003 (1988).

---

**1.** The verdict was calculated by adding interest and crediting payments to the judgment attained by Sexton against Larsen and Watkins on August 5, 1982. The amount due on the judgment as of April 10, 1989 was $820,328.85. To this amount, Judge Nalley added litigation expenses of $49,822.52 and attorney's fees of $293,383.59 for a total of $1,163,534.96. A $.60 discrepancy between this sum and the amount of the judgment appears to exist. On remand, the court should re-examine these figures.

The trustee continued with discovery efforts and, on October 18, 1988, filed a notice and a subpoena *duces tecum* requesting that State Farm's corporate designee produce certain documents on Monday and Tuesday, November 14 and 15, 1988 in Bloomington, Illinois. Since the magnitude of the request materially affected what subsequently transpired, we will reproduce it in its entirety.

## DESIGNATED AREAS OF TESTIMONY

1. to identify the persons and describe fully the activities of all personnel [located at the home office] who were involved in any aspect of the claims arising from the accident. This request includes both the Sexton lawsuit and the current Schlossberg claim.

2. to identify the persons and describe fully the activities of all personnel [located at the home office] who were involved in the establishment or execution of policies or procedures respecting claims for damages which exceed the policy coverage. This includes the policies/procedures in effect in 1980 and all changes to the present date.

3. to identify the persons and describe fully the activities of all personnel [located at the home office] who were involved in the establishment or execution of policies or procedures designed to prevent judgments against State Farm for negligent or bad faith handling of claims against its insureds. This includes the policies/procedures in place in 1980 and all changes to the present time.

4. to identify and describe fully any legal action in court or administrative action before a governmental body brought against State Farm for negligence or bad faith in handling any claim against its insured. This includes actions styled as for fraud or misrepresentation in the failure to pay benefits or in settling claims.

5. The witness or witnesses should be prepared to testify fully concerning the identity, and present location of every document reflecting any of the persons or activities identified in the above paragraphs.

6.  to identify the General Claims Consultant to the Divisional Claims Superintendent responsible for the Sexton case after the verdict was received, and to describe fully his activities undertaken in accordance with General Claims Memo # 315 (R–2) dated 9/15/78 and any other applicable General Claims Memoranda.

7.  to identify the members of the General Claims Committee (and to describe fully their activities) undertaken pursuant to General Claims Memo dated 12/17/79 and any other applicable General Claims Memoranda.

8.  to identify the person in the Corporate Law Department assigned to be responsible for the direct supervision of the Schlossberg lawsuit against State Farm pursuant to General Executive Memo # 132 dated 4/10/85.

## DOCUMENTS AND TANGIBLE THINGS TO BE PRODUCED

1.  Every document, tape or video recording reflecting policies and procedures in place for the handling of automobile liability claims from July 12, 1980, to present which should include but not be limited to:

a.  policies and procedures for cases in which a policy limits demand or demand in excess of the policy has been made by counsel suing the insured;

b.  policies and procedures for cases in which independent counsel representing the insured had demanded that State Farm make an effort to settle the case by offering the limits of the coverage under the policy.

2.  Every document, video or tape recording in any way involved in the handling of the accident investigation on July 12, 1980, involving State Farm's insured, Jorgen L. Larsen.

3.  Every document, video or tape recording in any way involved in the handling of the litigation resulting from the accident on July 12, 1980, involving State Farm's insured, Jorgen L. Larsen.

4. Every document, video or tape recording in any way involved in the handling of the bad faith litigation against State Farm Mutual Insurance Company, Inc., and State Farm's insured, Jorgen L. Larsen.

5. Every document, video or tape recording reflecting the date, time, place, and nature of the work performed by each person who was in any way involved in the handling of the matters described in the preceding paragraphs.

6. The State Farm procedures and systems manual used as of July 12, 1980, and including all changes to the present.

7. The State Farm general claims manual used as of July 12, 1980, and including all changes to the present.

8. The State Farm automobile claims manual used as of July 12, 1980, and including all changes to the present.

9. The State Farm claims superintendent manual used as of July 12, 1980, and including changes to the present.

10. All documents reflecting the policies and procedures of the State Farm Mutual Automobile Insurance Company, Inc., pertaining to the retention and management of claims files such as the one maintained in the case of *Sexton v. Larsen.*

* If the precise name of a manual is different from that used in the above request, please produce the manual most closely resembling the name used in the request.

11. A copy of the complete file sent to the General Claims Committee pursuant to General Claims Memorandum # 300 dated 12/17/79 or other applicable GCM.

12. A copy of the complete file sent to the General Claims Consultant to the Divisional Claims Superintendent pursuant to GCM# 315 (R–2) dated 9/15/78 or other applicable GCM.

13. A complete copy of the Master File on the Sexton case kept by Claims Superintendent Healey.

14. Copies of the two video tapes in ½ inch format entitled "ITS MORE THAN JUST A PHONE CALL."

15. Copies of the claim Video Network Catalogs as of July, 1982, and at the present time.

16. Video tapes (believed # 49) titled:

"INTRODUCTION TO AUTO ACCIDENT RECONSTRUCTION"

"AUTO ACCIDENT RECONSTRUCTION IN THE COURTROOM"

"AUTO ACCIDENT RECONSTRUCTION FACTS AND MEASUREMENTS"

17. Video tape # 54 titled "BAD FAITH LITIGATION"

18. A complete copy of the file sent to the Corporate Law Department person responsible for direct supervision of the Schlossberg lawsuit against State Farm pursuant to General Execution Memo # 132 at 4/10/85.

Following receipt of the notice, on November 7, 1988, State Farm filed a motion for protective order in which it stated that the depositions were requested on twenty eight days notice, that its lead counsel, O'Doherty, was unavailable on the dates indicated, that some of the material requested was not discoverable and asked that the depositions be scheduled in Baltimore. On November 14, 1988, the trustee responded with an opposition to State Farm's motion for protective order and requested that the time for production be shortened by two days. On the same date, the trustee also filed a motion to compel discovery and for sanctions.

The motion for protective order was scheduled for hearing on November 14, 1988. Judge Bowling heard the matter in chambers and no record was made of the proceeding. Exactly what transpired is a matter of conjecture, since the attorneys in this case agree on very little. In any event, it seems clear that Mr. Wheeler, O'Doherty's associate, saw the "Plaintiff's Motion for Order Compelling Discovery and for Sanctions" for the first time at 9:00 a.m. on November 14, 1988 when he met with Mr. Shadoan and Judge Bowling in chambers. It also appears that Judge Bowling expressed reservations about presiding over the

trial since he was friendly with Mr. Miller, the former State Farm attorney who was then a defendant in the case. Nevertheless, as Mr. Wheeler did not object, Judge Bowling proceeded to hear the motion to compel which Mr. Shadoan introduced on that morning. After conferring with the attorneys, Judge Bowling signed an order requiring State Farm to comply with all of the comprehensive dictates of the notice filed on October 18, 1988. It is apparent that the existence of this order, imposing onerous requirements on State Farm, set the stage for the default subsequently entered.

This is not intended as a criticism of Judge Bowling in signing the order. The action taken by him is understandable in view of the prior discovery problems involving loss of the State Farm claims file and concomitant inability on the part of State Farm to answer interrogatories fully. The court was also making strenuous efforts to reach a trial date in the Spring of 1989. Nevertheless, the existence of the November 14, 1988 order gave the trustee a lever which he, assisted by State Farm's intransigence, skillfully used to secure the default.

The deposition proceeded as scheduled on November 15 and 16, 1988 in Bloomington, Indiana. State Farm produced its corporate designee, Francis X. Comella, Jr., who testified for two days in a deposition comprising 288 pages. A fair reading of the deposition reveals that Comella testified in a forthright manner. During the course of the two days, there were a few areas of inquiry at which State Farm, through its counsel, balked. On the whole, those areas were not extensive and primarily involved matters to which State Farm had reasonable objections deserving of judicial review. Parenthetically, the need of State Farm to object, seemingly in the face of a court order, was a direct result of the order of November 14, 1988 which, clearly, should not have been entered without adequate notice to State Farm and a reasonable opportunity to contest.

On December 2, 1988, the trustee sought sanctions against State Farm for failure to obey the discovery order

of November 14, 1988. Subsequently, on December 29, 1988, the trustee filed a supplemental memorandum in support of his motion for default, for sanctions, to compel discovery, and for other relief. In his motion and supplemental memorandum, the trustee alleged that State Farm had refused to obey the court order of November 14, 1988, had refused to designate any witness to testify concerning the corporate policies respecting claims which exceeded the policy limits, had refused to designate any witness to testify respecting its policies concerning claims against the company for bad faith or negligent handling of claims, had refused to allow plaintiff's counsel to inspect or copy certain video tapes, and had refused to produce a claim manual.

In this posture, the matter came before Judge Nalley for hearing on January 19, 1989. At the hearing, the trustee averred that State Farm failed to produce certain manuals. State Farm had, however, produced numerous manuals and had offered to produce the disputed manuals to a judge who could rule on their admissibility. The trustee further alleged that State Farm refused to produce and permit copying of certain videotapes. The record shows, however, that State Farm had offered to produce the videos to the court so that a ruling could be made on their admissibility.

After a lengthy hearing, Judge Nalley found that there had been a wholesale failure to comply with discovery. He granted the motion for default[2], and gave State Farm an opportunity to cure the default by producing, in Maryland, Mr. G. Robert Mecherle to testify fully concerning items numbered 1 through 5 of the court order of November 14, 1988 and to provide State Farm's "Excess Liability Handbook", copies of its manuals and copies of its videotapes. Unfortunately, the court gave little attention to State Farm's legitimate discovery questions and proceeded as if

---

2. Judge Nalley was apparently acting on the motion filed November 14, 1988. The motion of December 2, 1988 simply asked for sanctions.

Judge Bowling's order of November 14, 1988 resolved them all.

The trustee then deposed Mr. Mecherle in Baltimore. While it appears that the previous deponent, Mr. Comella, testified forthrightly and cooperatively, the same cannot be said of Mr. Mecherle. Mr. Mecherle, seemingly oblivious to the extreme peril faced by State Farm in view of the default and Judge Nalley's clear instructions, refused to answer numerous questions.

Considering the position in which State Farm found itself, prudence would have suggested that Mecherle answer the questions propounded and that counsel interpose appropriate objections at the time the evidence was offered at trial. Niemeyer & Richards, *Md. Rules Commentary*, p. 212. Faced with Mecherle's lack of cooperation, Judge Nalley refused to strike the default. The matter was subsequently scheduled for trial; Judge Nalley received testimony on inquisition for damages and entered judgment in favor of the trustee in the amount of $1,163,534.36.

Appellant raises a number of issues which we shall consider in order.

1. Did the trial court abuse its discretion in denying the defendant's, State Farm Mutual Automobile Insurance Company, motion for protective order?

2. Did the trial court abuse its discretion in granting plaintiff's motion for order compelling discovery and for sanctions?

3. Did the trial judge commit reversible error in issuing an order granting the plaintiff's motion to compel discovery and deferring consideration of sanctions pending compliance with the order where immediate recusal was mandated?

4. Did the trial court abuse its discretion in entering a conditional default judgment?

5. Did the trial court abuse its discretion in granting the plaintiff's motion for a default judgment with sanctions?

6. Did the trial court commit reversible error in denying the defendant, State Farm, a right to a jury trial on the issue of damages or, in the alternative, is Rule 2–433(a)(3) constitutional?

7. Did the trial court commit reversible error in awarding attorney's fees and trial preparation expenses?

8. Did the. trial court commit prejudicial error in refusing to consider evidence in mitigation of damages?

1. Did the trial court abuse its discretion in denying State Farm's motion for Protective Order?

■ The record indicates that the trustee cleared the deposition dates with appellant's designee. The court had authority to shorten the time for notice to take the deposition, and the reduction of two days is not of itself onerous. The fact that State Farm's lead counsel was unavailable is not sufficient ground to require a postponement of the deposition, and the location in Bloomington, Indiana, where the home office of State Farm is located, was not an inconvenient forum for State Farm. While we concede that, in the interests of a more deliberate and orderly procedure, it might have been desirable for the court to grant the motion for protective order, we do not believe that the failure to do so amounted to an abuse of discretion.

2. Did the trial court abuse its discretion in granting trustee's motion for an order compelling discovery?

■ On November 14, 1988, Judge Bowling denied State Farm's motion for protective order and took the additional step of signing an order requiring State Farm to comply with extremely detailed, comprehensive discovery requirements. State Farm insists that this action amounted to an abuse of discretion, because Md. Rule 2–311(b) requires that a party against whom such a motion is directed shall have fifteen days after service to file a written response. It is clear that the motion to compel was sprung on State Farm's counsel, without prior knowledge, the morning of November 14, 1988 and was signed by the court immediately following a chambers conference.

The trustee contends that State Farm has not preserved this issue for appeal. The trustee further avers that State Farm's current objection was not raised before Judge Bowling. Unfortunately, we are unable to determine whether the trustee is correct, since the hearing before Judge Bowling on November 14, 1988 was in chambers and was apparently not recorded. The parties first addressed this issue on the record during a January 19, 1989 hearing before Judge Nalley wherein State Farm made an oral motion requesting the court to strike the November 14, 1988 order. State Farm objected to the order because it was entered without notice and because it provided for discovery over and above what is contemplated by the Maryland Rules of Procedure.

We are constrained to agree that the order of November 14, 1988, entered without prior notice to State Farm and without a reasonable opportunity to contest, amounted to an abuse of discretion. Accordingly, it should not have been signed on November 14, 1988 and should have been stricken by Judge Nalley on January 19, 1989.

3. Did the hearing judge commit reversible error in issuing an order granting trustee's motion to compel discovery and deferring consideration of sanctions where immediate recusal was mandated?

This issue relates to the same order as issue number two. Since we have already determined that said order was improper, only a brief discussion of this issue is necessary. We believe, from a reading of the record, that Judge Bowling made a full disclosure of his position prior to signing the order. No timely request for recusal was made; therefore, an after-the-fact request for recusal was properly denied.

4. Did the trial court abuse its discretion in entering a conditional default judgment?

The judgment complained of in this issue was entered by Judge Nalley following the hearing of January 19, 1989 and related to the deposition of Francis X. Comella, Jr.

taken in Bloomington, Indiana on November 15 & 16, 1988. Our reading of the record persuades us that Comella testified forthrightly, was not evasive, and was generally cooperative during his deposition. Although State Farm withheld some documents and video tapes, it offered to make them available to the court for inspection and for determination as to admissibility. Notwithstanding this, Judge Nalley found "wholesale failure to comply with discovery" and entered a conditional[3] default. Had the default entered under those circumstances been final rather than conditional, we would reverse. Judge Nalley, however, acted prudently and cautiously by ordering State Farm to make Mr. Mecherle available for deposition in an attempt to correct what the court perceived as willful misconduct. We, therefore, do not find that Judge Nalley abused his discretion in entering the default on January 19, 1989.

5. Did the trial court abuse its discretion in granting trustee's motion for a default judgment with sanctions?

■ On March 14, 1989, following the Mecherle deposition, a hearing was conducted on trustee's Motion to Compel Discovery for Default or Other Relief and on State Farm's Motion to Vacate Judgment by Default.

Subsequent to the hearing on January 19, 1989 and prior to the deposition of Mr. Mecherle, Mr. Wheeler wrote to State Farm with detailed information on what Judge Nalley required. He told State Farm, *inter alia:*

1) that Robert Mecherle be produced for deposition in Maryland and provide testimony on the following:

a) the identity and activities of all home office personnel involved in any aspect of the Sexton claim through the conclusion of trial;

b) the identity and activities of all home office personnel involved in establishing or executing policies and

---

**3.** There is no warrant in the Maryland Rules for a conditional default. It was referred to by the court and parties as a conditional default since Judge Nalley indicated that he would strike the default if State Farm satisfied certain enumerated conditions.

procedures in effect from 1980 through trial of the Sexton suit for the handling of claims in excess of policy coverage;

c) the identity and activities of all home office personnel involved in establishing or executing policies and procedures in effect from 1980 through trial of the Sexton suit designed to prevent judgments against the company for negligence or bad faith in handling claims against State Farm insureds;

d) identification and description of all legal or administrative actions against State Farm involving negligence, bad faith, fraud, or misrepresentation in handling claims against its insureds;

e) identification and present location of all documents relating to the testimony to be offered in items a through d above; and

f) the history and development of the 1972 Excess Liability Handbook (Comella deposition, Exhibit 12).

In connection with item f, the handbook is to be produced along with all documents relating or referring to it. If the handbook was not a manual used by the State Farm Mutual Automobile Insurance Company, then Ross Hume must also be produced for deposition in Baltimore to offer testimony in connection therewith;

2) that copies of the Automobile Claim Manual, the Superintendent Claim Manual, and the General Claim Manual be produced in Maryland, as they existed for the period 1980 through the Sexton trial; and

3) that the following tapes be produced in Maryland: "Auto Accident Reconstruction", "Bad Faith Litigation", and "Its More than just a Phone Call."

Despite Mr. Wheeler's understanding of the precarious nature of State Farm's position and his advice that State Farm comply with Judge Nalley's order of January 19, 1989, State Farm took an inexplicable stance at Mr. Mecherle's deposition. The first pertinent question asked was:

Mr. Shadoan: Let me start, Mr. Mecherle, by asking you what you have done to determine the history of the preparation of the Excess Liability Handbook?

Mr. Wheeler: Objection. George, why don't you ask him your questions? Let's not get into work product.

Mr. Shadoan: Are you instructing him not to answer?

Mr. Wheeler: Yeah.

Mr. Shadoan: Okay. What was the first action that you undertook to determine the history of the preparation of the State Farm Excess Liability Handbook?

Mr. Wheeler: Objection. George, we have the parameters of the scope of this examination, why don't you ask your questions rather than getting into work product?

Mr. Shadoan: I don't regard it as work product.

Mr. Wheeler: Well, I do. If you have a question regarding that manual, start asking him.

Mr. Shadoan: Are you instructing him not to answer?

Mr. Wheeler: Yes.

Mr. Shadoan: Who are the people that you used in seeking to compile the information required by the court concerning the history of the preparation, the publication, dissemination and ultimate withdrawal of the placement of the Excess Liability Handbook?

Mr. Wheeler: Objection. Instruct you not to answer, Mr. Mecherle. George, we're getting off to a real bad start here. If you want to inquire as to the manual, the use of the manual, the history of the manual, let's do it. Let's not start off getting into work product.

Mr. Shadoan: What documentation have you uncovered which reveals information concerning the history of the preparation of the Excess Liability Handbook?

Mr. Wheeler: Objection. Instruct you not to answer.

Without adding to an already lengthy opinion, suffice it to say that the conduct of State Farm throughout the deposition was, in general, along the lines of the foregoing. According to Mr. Shadoan's count, State Farm's counsel instructed Mr. Mecherle not to answer over thirty times

during the course of the deposition. Our reading gives us no reason to question the accuracy of his arithmetic. In addition, State Farm failed to produce certain specified documents. Faced squarely with the ultimate sanction of default, State Farm adamantly refused to obey Judge Nalley's order of January 19, 1989. On March 14, 1989, after reading the Mecherle deposition and hearing arguments of counsel, Judge Nalley refused to strike the default entered on January 19, 1989.

██ In summary, on the question of default, we find that, at the outset, Judge Bowling erred in entering the order of November 14, 1988. On January 19, 1989, Judge Nalley should have stricken that order, but in view of the fact that Judge Nalley gave State Farm ample opportunity to supply proper discovery and State Farm willfully and contumaciously refused, Judge Nalley did not abuse his discretion in declining to strike the order of default on March 14, 1989. We find that the errors of Judge Bowling on November 14, 1988 and Judge Nalley on January 19, 1989 (in refusing to strike the order of November 14, 1988) were harmless in the overall context of this dispute.

Maryland Rules 2–432 and 2–433 provide authority and guidance to the trial court in the event of a failure of discovery. Md.Rule 2–432(a) provides for immediate sanctions in certain circumstances, and, Rule 2–432(b) permits a party to move for an order compelling discovery under other circumstances. Sanctions, including the ultimate sanction of an order of default, are permitted under Rule 2–433(a)(3) when appropriate.

In *Lynch v. R.E. Tull & Sons, Inc.,* 251 Md. 260, 261, 247 A.2d 286 (1967), the Court of Appeals stated that while "[t]here have been suggestions that this ultimate sanction usually will be invoked only where the failure is wilful or contumacious ... there may be other occasions when this gravest sanction can properly be invoked." As stated by Judge Robert M. Bell, writing for this Court in *Berkson v. Berryman,* 63 Md.App. 134, 142, 492 A.2d 338, *cert. denied,*

304 Md. 296, 498 A.2d 1183 (1985), "The decision whether to grant a motion for default judgment for failure to comply with discovery is within the sound discretion of the trial judge and will not be disturbed on appeal in the absence of an abuse of discretion."

Our review of the record convinces us that while we would prefer to see the issues in this case tried before a jury, particularly since State Farm has what appears to be a reasonable defense, we cannot find that Judge Nalley abused his discretion in refusing to strike the default. This is apparent in view of State Farm's deliberate refusal to comply with the discovery order of January 19, 1989.

6. Did the trial court commit reversible error in denying State Farm the right to a jury trial on the issue of damages?

The Maryland Rules clearly provide that, subsequent to a default, the party in default no longer has the option of a jury trial on the remaining issue of damages. Only a party not in default may have the election of a court trial or a jury trial. Md. Rules 2–325(f) and 2–433(a)(3). The difficulty with these rules is that they seem to conflict with *Knickerbocker Inc. Co. v. Hoeske*, 32 Md. 317 (1870), where the Court of Appeals held that a party in default is entitled to a jury trial on the issue of damages. The trustee insists that *Knickerbocker* is no longer controlling because the Court of Appeals has promulgated the Maryland Rules subsequent to the decision in *Knickerbocker*.

The trustee also avers that this precise issue was decided by this Court in *Cellano v. Farbo*, 59 Md.App. 606, 477 A.2d 787 (1984). In *Cellano*, we stated that "[a]ppellee's contention that she had a right to withdraw her election for jury trial without the consent of appellant is correct." We note, however, that the constitutionality of the Md. Rule was not at issue. It appears that *Cellano* was reversed because the plaintiff's attorney deliberately mislead the trial court into the erroneous impression that defendant's attorney was not contesting the action. The holding in *Knickerbocker*, how-

ever, is squarely based upon the Maryland Constitution, former Article 15 § 6, now Article 23 of the Declaration of Rights.

Fortunately, in our view of this case, it is not necessary to decide the constitutionality of the rule. The proper method of assessing damages in the case *sub judice* is the difference between the insurance coverage and the jury verdict in the underlying case of Sexton v. Watkins and Larsen. Since liability has been decided by the default, and since the damages to be awarded in this case are a fixed sum determined by mathematical computation, there is no fact issue for a jury to decide. Judge Nalley was, therefore, correct in fixing the amount of damages without a jury.

7. Did the trial court commit reversible error in awarding attorney's fees and trial preparation expense?

This issue has been conceded by the trustee. Upon remand the trial court shall enter a judgment in an amount not including attorney's fees and trial preparation expenses.

8. Did the trial court commit prejudicial error in refusing to consider evidence in mitigation of damages?

■ The thread of this issue has run through this case from its genesis. On February 27, 1987, the Circuit Court for Prince George's County entered summary judgment in favor of the defendants on the ground that Larsen had failed to minimize his damages. This Court reversed. *Schlossberg*, 73 Md.App. 415, 534 A.2d 1003. After discussing the principle that mitigation of damages is a factual question for the jury, this Court went on to say:

> The trial court also erred for another reason. In granting appellees' motion for summary judgment, the trial court, as did appellees, stressed that had Larsen assigned his cause of action to the Sextons he would have thereby insulated himself from any damages as a result of the excess verdict. In other words, the focus was upon the effect the assignment would have had on Larsen; it was not upon its effect on appellees. It is, however, the latter

effect upon which focus more appropriately should have been directed. Whether Larsen assigned his cause of action for damages based on bad faith refusal to settle and professional malpractice, were not affected one bit. The only thing that would have been changed had Larsen assigned his cause of action to the Sextons instead of filing for bankruptcy is the named plaintiff in this case [3]: rather than the plaintiff being the Trustee in Bankruptcy, as is the case now, the plaintiffs would have been the Sextons.

. . . . .

3. In all probability counsel would have been the same. Counsel for the Sextons in the underlying action is also counsel for the Trustee in Bankruptcy in this appeal.

We hold that neither assigning the cause of action to the Sextons nor filing bankruptcy affects either the fact or extent of appellees' liability for negligent or bad faith refusal to settle.

*Schlossberg,* 73 Md.App. at 424, 534 A.2d 1003.

The measure of damages in this case is the difference between the judgment and policies' limits, plus interest and costs. *State Farm v. White,* 248 Md. 324, 236 A.2d 269 (1966); *Roebuck v. Steuart,* 76 Md.App. 298, 312, 544 A.2d 808 (1988); *Sweeten, Adm'r v. Nat'l Mutual,* 233 Md. 52, 54, 194 A.2d 817 (1963); *Lee v. Nationwide Mutual Ins. Co.,* 286 F.2d 295 (4th Cir.1961); *Myers v. Ambassador Ins. Co., Inc.,* 146 Vt. 552, 508 A.2d 689 (1986); *Mello v. General Insurance Company of America,* 525 A.2d 1304 (R.I. 1987). The trial court did not err in refusing to consider evidence in mitigation of damages.

JUDGMENT VACATED. CASE REMANDED FOR ENTRY OF JUDGMENT CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEE.