574 A.2d 923

**Jaime TRAVERSO**

v.

**STATE of Maryland.**

**No. 1592, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

June 7, 1990.

See also, 6 Va.App. 172, 366 S.E.2d 719.

Richard William Winelander, assigned Public Defender (Alan H. Murrell, Public Defender on the brief) Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Alexander Williams, Jr., State's Atty. for Prince George's County, Upper Marlboro, on the brief), for appellee.

Argued before ALPERT, KARWACKI and ROBERT M. BELL, JJ.

KARWACKI, Judge.

On April 5, 1988, the Court of Appeals of Virginia reversed the conviction of the appellant, Jaime Traverso, for the murder of his wife because of the Commonwealth's failure to prove territorial jurisdiction over the offense. *Traverso v. Commonwealth,* 6 Va.App. 172, 366 S.E.2d 719 (1988). The case was then presented to a grand jury sitting in Prince George's County, which on August 9, 1988 indicted appellant for the murder of his wife. A bench trial was conducted in the Circuit Court for Prince George's County before Judge James Magruder Rea. At the conclusion of the trial, Judge Rea found that appellant was guilty of murder in the first degree and sentenced him to life imprisonment. On appeal from that judgment appellant raises four issues:

I. Did the judge err in not recusing himself?

II. Was the evidence insufficient to prove that appellant committed murder in the first degree?

III. Was the evidence insufficient to prove that Maryland had territorial jurisdiction?

IV. Was appellant's right to confrontation violated by the introduction of the transcript of two witnesses' testimony taken at the Virginia trial in lieu of live testimony at the Maryland trial?

We answer these questions in the negative and affirm.

On July 30, 1985, William H. Harris, a Deputy Sheriff for Loudoun County, Virginia, stopped appellant at 2:50 a.m.

while he was speeding southbound on Route 15 south of Lucketts, Virginia. Appellant told the officer that he did not have his driver's license or the car's registration, but upon further discussion with the officer, appellant eventually produced them. On the front seat of appellant's automobile, Sheriff Harris noticed a woman's pocketbook. Appellant explained that it was his girlfriend's bag and that he was returning from Ottawa, Canada. Later that day, officers from the Loudoun County Sheriff's Department found the body of Antonia Traverso, appellant's wife, floating face down in the Potomac River near McKinney's Landing in Virginia. In the investigation conducted at McKinney's Landing, drag marks were discovered leading from a concrete apron to the river bank. A piece of twine, parts of the victim's clothing, and a footprint were also found on the river bank.

After obtaining a search warrant for appellant's car, parts of the carpet which was in the trunk were removed along with a wheel cover. Later, forensic analysis of the carpet and clothing fabric worn by Mrs. Traverso, the clothing fabric found on the shore of the Potomac, the twine found on the river bank, and Mrs. Traverso's blood revealed that: (1) the blood on the fragment of cloth was consistent with Mrs. Traverso's blood; (2) appellant was not the source of the blood found in the trunk; (3) the blood found on the twine was consistent with the victim's blood; (4) the piece of cloth found on the river bank was part of the victim's blouse; and (5) the fibers of the twine found on the shore of the Potomac were consistent with the fibers found on the blouse and fibers found in the carpet removed from the trunk of appellant's car.

Shigella Anais Traverso, the couple's daughter, testified that on July 29, 1985, the day before the body was discovered, she saw her mother enter her father's car. Another witness, Dexter D. Kaufman III (Kaufman), who had been incarcerated with appellant, testified that subsequent to the reversal of appellant's conviction in Virginia, appellant confessed to committing the murder and described to Kaufman

the details of how it was accomplished. Kaufman's testimony was corroborated by Thomas Kirk Doyle (Doyle) who had also been incarcerated with appellant and who had overheard one of the conversations between appellant and Kaufman. According to these two witnesses, appellant stated that he and his estranged wife had gone to a restaurant in Prince George's County, Maryland; that they argued in the restaurant and later in his car; and that at some point while still in Maryland, appellant pulled the car over, got out, and strangled Mrs. Traverso with a piece of twine. Then, he put her body in the trunk and drove to Virginia where he stabbed her already dead body with a knife several times to make sure that she was dead before throwing her body into the Potomac River.

## I.

■ Appellant's first contention need not detain us long. He asserts that the trial judge should have recused himself from presiding at a bench trial because of his involvement in unsuccessful negotiations for a plea agreement prior to trial, because he was aware of the reason for the reversal of appellant's conviction in Virginia, and because of the court's comments concerning appellant's litigious nature. Appellant points to the colloquy between his trial counsel and the court prior to the beginning of the trial:

MR. LYNCH [Appellant's trial counsel]: Thank you, Your Honor. The other matter we would like to place on the record is by way of negotiations. An offer has been made to the defendant in regard to this case, that should he be willing to enter a plea of guilty to the indictment itself, being murder in the first degree of one Antonia Traverso, that the Court would impose a life sentence, suspending all but 30 years.

And that plea negotiation offer has been rejected, and is rejected by the defendant.

THE COURT: The Court is aware such an offer was made by the Court and the prosecutor, so I don't feel there is any conflict. And the reason the Court partici-

pated in it, for the record, is because the Court is aware the gentleman has been convicted in the State of Virginia after a trial. And that his conviction was reversed, and now he's brought here to Maryland to be tried.

And he's filed numerous civil actions, and the Court felt in the interest of judicial economy, that if there was a possibility that he would accept such a plea, we would eliminate any further actions on the part of the defendant, as far as different types of hearings, and actions. But the defendant has rejected that. And the Court is going to indicate thereby, the maximum sentence is a life sentence.

And I do not feel that I am bound in any way, that the sentence would come out whatever the Court feels is justified, after having heard the trial of the case, and the way it will fit in our sentencing guidelines. I think it will probably fit in the guidelines as a life sentence.

MR. LYNCH: Yes, sir.

THE COURT: And there's no lesser guidelines, I don't believe. All right. Do we want a jury or not, Mr. Lynch?
. . .

The short and complete answer to this contention of appellant is that he never asked the trial judge to recuse himself. Thus, no issue concerning recusal has been preserved for our review. Rule 8–131(a); *State Farm v. Schlossberg*, 82 Md.App. 45, 57, 570 A.2d 328 (1990); *McCall v. Warden*, 3 Md.App. 188, 191, 238 A.2d 574 (1968).

## II.

■ Appellant next argues that the State did not produce sufficient evidence to prove that appellant committed murder in the first degree. "All murder which shall be perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing shall be murder in the first degree." Md.Code Ann., Art. 27, § 407. Appellant claims that he is only guilty of voluntary manslaughter, if he is guilty at all, because his wife provoked

his attack upon her when she hit him after he struck her. He argues that the evidence produced by the State was only sufficient to prove a homicide blameworthy somewhere between second degree murder and voluntary manslaughter because he claims that he hit his wife and that she hit him back and that "... he got very angry and lost his head." In so arguing, appellant seeks to have this Court disturb findings of fact by the trial judge which are supported by the evidence. That is not our role. Our function in reviewing the sufficiency of the evidence is to determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'." *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980), *quoting Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (emphasis in original), *reh'g denied,* 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). The Court in *Tichnell, Id.* 287 Md. at 717–18, 415 A.2d 830, explained the test which is used to determine whether a homicide is wilful, deliberate, and premeditated and thus in the first degree:

> For a killing to be 'wilful' there must be a specific purpose and intent to kill; to be 'deliberate' there must be a full and conscious knowledge of the purpose to kill; and to be 'premeditated' the design to kill must have preceded the killing by an appreciable length of time, that is, time enough to be deliberate. It is unnecessary that the deliberation or premeditation shall have existed for any particular length of time. Their existence is discerned from the facts of the case. *E.g., Gladden v. State,* 273 Md. 383, 387, 330 A.2d 176 (1974); *Robinson v. State,* 249 Md. 200, 208–09, 238 A.2d 875, *cert. denied,* 393 U.S. 928, 89 S.Ct. 259, 21 L.Ed.2d 265; *Chisely [Chisley] v. State,* 202 Md. 87, 106–07, 95 A.2d 577 (1953). If the killing results from a choice made as the result of thought, however short the struggle between the intention and the act, it is sufficient to characterize the crime as deliberate and premeditated murder. *Wilson v. State,* 261 Md. 551,

565, 276 A.2d 214 (1971); *Hyde v. State,* 228 Md. 209, 215–216, 179 A.2d 421 (1962).

Clearly, when the evidence in the instant case is viewed in the light most favorable to the State, there was sufficient evidence that appellant killed his wife wilfully, deliberately, and with premeditation. Appellant removed a piece of twine which he had conveniently placed in his pocket, approached his wife, placed the twine around her neck, and applied the force necessary for time enough to strangle her to death. Moreover, when he later thought that he heard a noise coming from Mrs. Traverso's body as he removed it from the trunk of his car, he repeatedly inflicted stab wounds to the already dead body.

### III.

■■■■ Appellant also asserts that there was insufficient evidence to support the court's determination that the murder occurred in Maryland, so as to establish its territorial jurisdiction over the prosecution for this crime. *Pennington v. State,* 308 Md. 727, 730, 521 A.2d 1216 (1987). At trial, Kaufman and Doyle specifically testified that appellant admitted that the murder occurred in Maryland. Appellant contends, however, that these inculpatory admissions are insufficient to establish Maryland's jurisdiction because they were not corroborated. Appellant misconstrues the corroboration requirement applicable to confessions of crime. The only corroboration required of an extrajudicial confession of guilt is independent proof of the *corpus delicti. Woods v. State,* 315 Md. 591, 615–16, 556 A.2d 236 (1989). In the instant case ample evidence that Mrs. Traverso had been murdered was produced. In *Lemons v. State,* 49 Md.App. 467, 468–69, 433 A.2d 1179 (1981), we commented upon the rationale supporting the requirement that an extrajudicial confession be corroborated as to the *corpus delicti:*

It is well established in this State and the vast majority of jurisdictions elsewhere that a defendant's extrajudicial confession standing alone is, as a matter of law, insufficient to support a criminal conviction. To warrant a

conviction, such a confession must be accompanied—or as the rule is typically phrased, 'corroborated'—by some independent evidence. The reason beneath this long-standing rule is that such a requirement is necessary to 'protect the administration of the criminal laws against errors based upon untrue confessions alone.' *Wood v. State,* 192 Md. 643, 649, 65 A.2d 316 (1949). More particularly, as Judge Moylan observed on behalf of this Court, 'The thrust of the principle is to prevent mentally unstable persons from confessing to, and being convicted of, crimes that never occurred.' *Borza v. State,* 25 Md.App. 391, 403, 335 A.2d 142, *cert. denied,* 275 Md. 746 (1975). That this concern is real and not frivolous is attested to by psychology and history alike. *See Note, Proof of the Corpus Delicti Aliunde the Defendant's Confession,* 103 U.Pa.L.Rev. 638 (1955). Hence, the so-called 'corroboration rule' does not rest on idle musings about theorized possibilities but is founded upon sound principle grounded on fact.

This rationale has no application to the requirement that a court have territorial jurisdiction over the prosecution of a crime. Consequently, we hold that where territorial jurisdiction is challenged by an accused, the court's conclusion that it possesses the requisite jurisdiction may be based upon the uncorroborated incriminating admissions (or confessions) of the accused.

Appellant further assails the testimony of Kaufman and Doyle as to his admissions that he murdered his wife in Maryland on the ground that their testimony was contradictory and therefore incredible. We disagree. To the extent that there was any inconsistency in their testimony as to appellant's admissions, the resolution of any discrepancy was the province of the trial judge, and we defer to his conclusions. Rule 8–131(c).

## IV.

During the Virginia prosecution of appellant, two witnesses were produced by the Commonwealth, Ralph Tro-

bell and Sergge Mason, both of whom died before the trial of the instant case. Appellant objected to the introduction of the prior testimony of these witnesses, claiming that his strategy in the Virginia trial was to prove that Virginia did not have territorial jurisdiction, not to challenge these witnesses' version of the events. Thus, appellant posits that his constitutional right to confrontation was violated by the use of this former testimony in the Maryland proceeding.

Appellant acknowledges that " 'the right to confrontation is generally not violated when the accused has been given a prior opportunity to cross-examine the witnesses whose testimony is to be used against him'." *Crawford v. State*, 282 Md. 210, 214, 383 A.2d 1097 (1978), *quoting State v. Collins*, 265 Md. 70, 78, 288 A.2d 163 (1972). The Court of Appeals, *quoting* E. Cleary, *McCormick on Evidence* § 255 (3rd ed. 1984), has explained that the party who objects to the introduction of testimony will not prevail if he or she had the opportunity to cross-examine the witness in question:

> 'More important, and more often drawn in question, is the requirement that the party against whom the former testimony is now offered, or a party in like interest, must have had a reasonable opportunity to cross-examine. Actual cross-examination, of course, is not essential, if the opportunity was afforded and waived. The opportunity must have been such as to render the conduct of the cross-examination or the decision not to cross-examine meaningful in the light of the circumstances which prevail when the former testimony is offered'.

*Huffington v. State*, 304 Md. 559, 568, 500 A.2d 272 (1985), *cert. denied*, 478 U.S. 1023, 106 S.Ct. 3315, 92 L.Ed.2d 745 (1986).

At the Virginia trial, appellant had the opportunity to cross-examine fully these two witnesses. Nevertheless, he chose to limit that cross-examination to serve his trial strategy. It was appellant's right to employ that trial strategy, but because he did so, he could not successfully complain, based upon the Sixth Amendment or the law of

evidence, when the former testimony of those witnesses was admitted against him pursuant to a well settled exception to the exclusion of hearsay evidence. McLain, *Maryland Evidence*, § 804(1).1.

JUDGMENT AFFIRMED;

COSTS TO BE PAID BY THE APPELLANT.